(66 South. 761)

No. 20,113.

CALHOUN v. BELL.

(Nov. 30, 1914.)

*(Syllabus by the Court.)*

1. MALICIOUS PROSECUTION ⬤⟳2 — DEFENSE —WANT OF JURISDICTION.

In suits for damages for malicious prosecutions and false arrest, it is not material that the plaintiff was prosecuted on an insufficient process, or before a court without jurisdiction.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 2; Dec. Dig. ⬤⟳2.]

2. MALICIOUS PROSECUTION ⬤⟳59—EVIDENCE —REPUTATION.

In such suits, the bad reputation of the now plaintiff is a circumstance bearing on the state of mind of the defendant going to show that

[1]Ante, p. 143.

the prosecutor had reasonable grounds and acted in good faith.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 125–137; Dec. Dig. ⬤⟳59.]

3. DISORDERLY HOUSE ⬤⟳3—BLIND TIGER— "TIPPLING-HOUSE."

A disorderly "blind tiger" is a disorderly "tippling-house."

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. §§ 3, 9–13; Dec. Dig. ⬤⟳3.

For other definitions, see Words and Phrases, First and Second Series, Tippling House or Shop.]

Appeal from Fifth Judicial District Court, Parish of Winn; Cas Moss, Judge.

Action by C. A. Calhoun against Jim Bell. From judgment for defendant, plaintiff appeals. Affirmed.

George Wear, Jr., of Jena, for appellant. Grisham & Oglesby, of Winnfield, for appellee.

SOMMERVILLE, J.   The general principles which govern in actions for malicious prosecutions have been so often laid down by this court that it is unnecessary to restate them here.

Numerous objections were made on the trial to the rulings of the court on the exclusion of testimony offered for the defense. They will be disposed of by a brief reference to the law in a general way, and not by reference to each one of the very many objections found in the record.

Defendant, a private citizen, after consulting the justice of the peace in the Sixth ward of Winn parish, made an affidavit, charging that on September 14, 1912, plaintiff "did keep a disorderly house and did disturb the peace by allowing cursing and swearing in his place of business, in Winn parish." Again, on October 5, 1912, defendant made another affidavit, charging that plaintiff "did on the 3d day of October, 1912, then and there retail liquor without a license," in the parish of Winn.

Plaintiff alleges that the defendant, in

making these affidavits, acted with malice and without probable cause. He avers that he was not guilty of the crimes alleged in the affidavits, and that his conduct had not been such as would cause a reasonable man to suspect him of being guilty of such crimes; that he has been arrested five different times at the instance of defendant; that two grand juries have acted upon the affidavits of defendant, and each time returned "no bill"; and that the district attorney for the parish of Winn refused to file a bill of information against him based on an affidavit of defendant. He asks for damages in the sum of $5,000.

Defendant answered that he had acted in the matter without malice, and under the belief that the plaintiff was guilty of each offense charged against him by defendant, and that such belief was based upon good and sufficient cause; and he denies that he acted without probable cause.

The evidence shows that plaintiff had been engaged in the mercantile business until some time before the affidavits were made against him, at which time he was engaged in running pool tables, selling cold drinks, and operating a "near beer" joint; and that his place was frequented by drunken, ill-behaved, and disreputable people, who indulged in loud, boisterous, profane, and vulgar language, and who were guilty of indecent and objectionable conduct, to such an extent as to make the business place of plaintiff objectionable in the extreme to passers-by and to those who lived in the neighborhood, one of whom was the defendant in this cause.

Plaintiff offered testimony to rebut the testimony offered by defendant, but the preponderance is in favor of defendant.

[1] It has been suggested that the affidavit charging plaintiff with having kept a disorderly house did not fall within the terms of section 908, R. S., inasmuch as plaintiff did not keep an "inn, tavern, alehouse, tippling-house, gaming house or brothel"; but it is not necessary that defendant should have charged plaintiff with an act or offense punishable by the laws of the state, or that the magistrate erred in ordering that he be arrested on such an affidavit. It is sufficient if the defendant maliciously, and without probable cause, procured plaintiff to be arrested. It is not material that the plaintiff was prosecuted on an insufficient process, or before a court without jurisdiction. Barton v. Kavanaugh, 12 La. Ann. 332; Miller v. Holstein, 16 La. 389; Lange v. Railroad, 107 La. 687, 31 South. 1003.

[3] Referring again to the provisions contained in section 908, R. S., which is said to define a disorderly house; the affidavit in this case charging such offense is covered by the terms thereof. It provides that "whoever shall be guilty of keeping any disorderly inn, tavern, alehouse, tippling-house, gaming house or brothel, shall suffer," etc. We conclude that the term "tippling-house" covers the business house of plaintiff. A tippling-house is defined as:

"A house where liquors are sold on draft" (Standard); "a house in which liquors are sold in drams or small quantities, to be drunk on the premises" (Webster); "a place where spirituous liquors are sold and drunk in violation of law" (Bouvier).

And as the evidence of several witnesses shows that they had bought and drunk spirituous liquors in the store of plaintiff, it results that he is the keeper of a "tippling-house"; and that a crime punishable by the laws of this state, keeping a disorderly house, was charged against plaintiff; and, as the intoxicating liquors were sold by plaintiff without having first obtained a license to sell same, he was guilty of the offense charged in the second affidavit made by defendant, that of selling intoxicating liquors without first having obtained a license to do so. Plaintiff was operating what is generally

known and recognized as a "blind tiger," a place where intoxicants are sold on the sly. City of Shreveport v. Maroun, 134 La. 490, 64 South. 388.

Plaintiff's place of business was a house open to the public, and it falls entirely within the provisions of Act No. 199, 1912, p. 395, which defines a disorderly house.

Much that has been said with reference to the affidavit charging plaintiff with keeping a disorderly house has application to the second affidavit, charging plaintiff with having sold intoxicating liquors without first having obtained a license to sell same.

[2] The evidence shows that on October 3, 1912, the date mentioned in the second affidavit, defendant saw several drunken men in and around plaintiff's place of business, who were profane, vulgar, and disorderly, and who were very annoying to defendant. Some of these persons were put on the witness stand by plaintiff, during the trial, who admitted that they were drunk on the occasion referred to, although they fixed it on another day; and some of them denied that they had obtained intoxicating liquor in the business place of plaintiff. But defendant saw them in and around plaintiff's place of business, and having seen many other intoxicated persons in the same place, and having been told by some of them that they bought the intoxicating liquors in said place, defendant was justified in suspecting and believing that the drunken persons in plaintiff's business house on October 3d had become intoxicated on liquors sold to them by plaintiff, and he had "probable cause" for making the affidavit against plaintiff charging that he had sold intoxicating liquors without first having obtained a license to sell same. Plaintiff did not have a liquor license; and defendant knew he had none.

Objection was made to the reception of evidence going to show that intoxicating liquors had been sold by plaintiff prior to the date mentioned in the affidavit. Defendant had often seen drunken men and women, white and black, in and around plaintiff's place of business, and he believed, and had good reason to believe, what some of these men told him, that they had bought the liquor which made them drunk from plaintiff; and, as the offenses were so clearly connected with the similar offense charged to have been committed on October 3d, the court properly received the evidence, upon which its judgment was based. As plaintiff was guilty of the one offense, it was fair to assume that he was guilty of the other.

Defendant's testimony with reference to drunkenness, vulgarity, profanity, and indecency on the part of customers of plaintiff in the latter's store, was sustained by that of other reputable citizens in the neighborhood where the offenses were charged to have been committed, and such testimony was admissible, although some of it did not have reference to the date mentioned in the affidavit.

Mr. Wigmore, in his work on evidence (paragraph 258, vol. 1), states the rule in this connection to be:

"Where in an action for malicious prosecution or false arrest, the issue arises whether the prosecutor had reasonable grounds and acted in good faith, bad reputation of the now plaintiff is a circumstance bearing on this state of mind, and is admissible. There is no reason why particular acts of similar misconduct of the now plaintiff should not be equally admissible on the same principle (ante 248) that particular acts of violence by a deceased person are admitted to show the apprehensions of a defendant charged with homicide."

This defendant cannot be punished for resorting to law and for the prosecution of his rights to live peaceably in his home, and without annoyance by plaintiff or his patrons. We shall quote from our opinion in Dearmond v. St. Amant, 40 La. Ann. 374, 4 South. 72, as follows:

"If plaintiff is innocent of this heinous charge, as the law presumes him to be, he has undoubtedly suffered a great wrong; and for him to be compelled to bear it without redress is, indeed, a hardship, but it is one of those sacrifices which

the individual is required to make to the interests of society. It is not only the lawful right, but the civil duty of every citizen, to set on foot criminal proceedings whenever he believes honestly and on reasonable grounds that a crime has been committed. The social interests require, and the law invites him thus to aid the state in the discovery and punishment of crime; and it would be equally unjust and impolitic to make him a guarantor of the success of the prosecution, or to make its failure an actionable wrong.

"Hence the law wisely holds the prosecutor harmless in such a case, notwithstanding the acquittal of the person accused, unless his conduct has been tainted by two concurrent vices: (1) Malicious motive; (2) want of probable cause, i. e., absence of reasonable grounds for believing in the truth of the charge made."

Defendant knew that plaintiff's place of business was disorderly, and he had reasonable grounds for believing that plaintiff was engaged in selling intoxicating liquors therein.

Judgment affirmed.

PROVOSTY, J., concurs in the decree.