[L. A. No. 5280.  Department Two.—December 17, 1919.]

## M. A. MURPHY, Respondent, v. E. M. DAVIDS et al., Appellants.

[1] MALICIOUS PROSECUTION—CHARGE OF FELONY EMBEZZLEMENT—ABSENCE OF CRIMINAL INTENT—SUFFICIENCY OF EVIDENCE.—In this action for malicious prosecution based on a complaint charging plaintiff with felony embezzlement followed by his arrest, examination, and discharge, it is held the jury was justified from the evidence in finding that no criminal intent was proven on the part of the accused and that the application of the moneys received by him was with the knowledge and acquiescence of all the persons concerned.

[2] ID.—ACTION UPON LEGAL ADVICE—QUESTION FOR JURY.—In an action for malicious prosecution, whether or not defendants acted *bona fide* upon counsel's advice is a question for the jury.

[3] ID.—ADVICE OF COUNSEL—WHEN NO DEFENSE.—Advice of counsel is no defense if the person who pretends that he has acted upon it did not believe the accused was guilty.

[4] ID.—CHARGE OF EMBEZZLEMENT—REAL INSTIGATOR—EVIDENCE.—In this action for malicious prosecution, it is held the evidence was sufficient to justify the conclusion that the defendant who did not swear to the complaint but who was a witness in the criminal proceeding, was the real instigator of the prosecution.

[5] ID.—EVIDENCE—PORTIONS OF TESTIMONY OF DEFENDANT AT PRELIMINARY EXAMINATION—ADMISSIBILITY.—Where in an action for malicious prosecution, the defendant who did not swear to the

criminal complaint denied that he took part in the criminal prosecution, portions of his testimony taken at the preliminary examination were admissible as admissions regarding his connection with the institution of the prosecution.

[6] ID.—GOOD REPUTATION OF PLAINTIFF—PROOF AS PART OF PLAINTIFF'S CASE.—In suits for damages because of malicious prosecution, the good reputation of the plaintiff has a direct bearing on the question of probable cause and may, therefore, be proven in chief, especially when such reputation is known to the defendant or defendants.

[7] ID.—RELATION OF FACTS TO ATTORNEYS—HONESTY OF WITNESS.— In an action for malicious prosecution growing out of a charge of felony embezzlement, the court properly sustained an objection to a question, as calling for a conclusion of the witness, asking if the witness "honestly" in conversation with the attorneys stated to them everything that he knew or had learned touching the matter.

[8] ID.—BELIEF OF GUILT—TESTIMONY OF DEFENDANT.—In an action for malicious prosecution, the defendant may testify to his belief on the subject of plaintiff's guilt.

[9] ID.—PROBABLE CAUSE—INSTRUCTION.—In an action for malicious prosecution based on a charge of embezzlement, where one of the pleaded assertions of defendants was that plaintiff was in fact guilty, an instruction that in order to determine that the plaintiff was guilty of embezzlement, it must appear from a preponderance of the evidence that the plaintiff had under his control a certain sum on or about the date charged, as trustee or agent, and having it so under his control, fraudulently and unlawfully appropriated it to some use not in the lawful execution of his trust, does not leave to the jury the question of existence or nonexistence of probable cause, in view of other instructions that the question of probable cause was one of law.

[10] ID.—ADVICE OF COUNSEL—STATEMENT OF FACTS—EXTENT OF.—In an action for malicious prosecution, the defendant seeking justification under advice of counsel is not required in addition to stating to his legal adviser all the material facts of the case of which he has knowledge, to go further and use diligence in the procurement of other facts, but if he has reason to believe that there are other facts bearing upon the guilt or innocence of the accused he must either disclose that belief or himself make inquiry to ascertain the facts in relation to the matter.

[11] ID.—CONVERSATION INVOLVING STATEMENTS MADE BY CODEFENDANT—ADMONITION TO JURY—REFUSAL TO STRIKE OUT WITHOUT ERROR.—Where in an action for malicious prosecution a witness testified as to a conversation had with one of the defendants in which such defendant related statements made by the other de-

fendant, there was no error in refusing a motion to strike out such testimony, where the jury had been instructed that the other defendant was not bound by such conversation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul W. Schenck, Swanwick & Donnelly and Gray, Barker & Bowen for Appellants.

Anderson & Anderson, Byron Waters and Victor T. Watkins for Respondent.

MELVIN, J.—Defendants appeal from a judgment for ten thousand dollars actual and five thousand dollars punitive damages in an action for malicious prosecution.

On August 11, 1915, E. M. Davids swore to a complaint charging M. A. Murphy (respondent herein) and M. W. Findley with felony embezzlement. After a preliminary examination both Murphy and Findley were discharged. It was charged in the criminal complaint that the defendants therein, on October 25, 1913, being intrusted with and having in their control four thousand dollars, as trustees and agents of the First National Bank of Los Angeles and Lycurgus Lindsay, feloniously embezzled, converted, and appropriated said sum of money to their own use, and to uses and purposes not in the due and lawful execution of their trust as such trustees and agents.

The complaint in the civil action set forth the circumstances of the charge against plaintiff and his arrest, examination, and discharge. It is alleged in this pleading that defendants maliciously and without probable cause instigated the criminal action; that all of the allegations therein were false; and that defendants were guilty of oppression and fraud in bringing the criminal action. There were elaborate allegations of damage by reason of the prosecution and its consequent publicity.

The answer of defendant, Davids, negatived the material allegations of the complaint, and further alleged that on or about April 28, 1913, and thereafter, M. A. Murphy and M. W. Findley were secretary and president, respectively, of the Independent Sewer Pipe Company; that they were

acting as the managers and agents of that corporation; that as such managers and agents they had entered into a contract to furnish terra cotta for the Merchants National Bank Building, in Los Angeles; and that while this contract was in full force Murphy and Findley assigned it, attaching to said contract the following agreement:

"Los Angeles, Cal., April 28, 1913.

"The Independent Sewer Pipe Company herewith transfers the within payments on terra-cotta contract hereto attached (the original of which is now on file in the county clerk's office in Los Angeles Co.) to be furnished for the Merchants National Bank Building, to be erected at the corner of Spring and Sixth Streets.

"It is understood and agreed that all payments on the attached contract shall be paid into the First National Bank, and the same shall be applied on payments of notes now held by the First National Bank.

"INDEPENDENT SEWER PIPE COMPANY,
"By M. W. FINDLEY, President,
"By M. A. MURPHY, Secretary."

It was further alleged that thereafter, and prior to the filing of the complaint in the criminal action, Findley and Murphy received four thousand dollars under the contract for furnishing terra cotta for the Merchants National Bank Building, "which said four thousand dollars said Findley and Murphy, and each of them, failed, refused and neglected to pay into or deposit with said First National Bank, but on the contrary, said Findley and Murphy, and each of them, converted said four thousand dollars to other and different uses"; that thereafter Davids visited the office of Paul Schenck, Esq., an attorney at law; that he presented the several contracts and agreements to Mr. Schenck, "and also made a full, fair and truthful statement of all the facts that had come to his knowledge at said time with reference to, and bearing upon, the question of the compliance of said Findley and Murphy with each and all of said contracts and agreements"; and that after Mr. Schenck read the contracts, heard the statement of defendant, Davids, and made some independent investigation into the facts of the case, the said attorney advised defendant, Davids, that the statement and facts showed that Findley

and Murphy were guilty of embezzlement. There is a further averment that Mr. Schenck placed before the district attorney and his deputies the statement of facts obtained from defendant, Davids, and from his own independent investigation; and that after careful consideration of the facts so presented, the district attorney and his deputies gave to defendant, Davids, their opinions that the said facts and acts warranted the prosecution of Findley and Murphy on a charge of embezzlement; and that upon the opinion and advice of Mr. Schenck and the district attorney and his deputies, defendant, Davids, swore to the complaint in the criminal action.

Defendant Lycurgus Lindsay, by his answer, asserted that he did not influence or instigate or advise "the making, swearing to, or filing of said complaint" in the criminal action. He followed the answer of his codefendant, Davids, in the allegations touching the assignment of the contract for terra cotta and the failure to pay the four thousand dollars collected by Murphy and Findley and the advice of Mr. Schenck to said Davids.

The cause was tried upon the issues thus joined and the jury, in response to special interrogatories, found that defendant, Davids, swore to the criminal complaint at the suggestion or with the knowledge of defendant, Lindsay; that Mr. Schenck was acting as defendant Lindsay's attorney in advising defendant, Davids, to file the criminal complaint; that both defendants were actuated by malice; that neither of defendants stated to Mr. Schenck in full the facts and circumstances before the bringing of said criminal action; that Mr. Schenck did not make a complete investigation of the material facts, in addition to what was told him by one or both of defendants, before the criminal complaint was sworn to; that neither defendants nor Mr. Schenck stated to the district attorney all the material facts in the case before the criminal complaint was filed; that defendants did not rely entirely upon the advice of the attorneys in filing said complaint; and that neither of the defendants honestly believed M. A. Murphy guilty of the crime charged. The answer of the jury to a question involving the facts and circumstances which defendants failed to state to Mr. Schenck was as follows:

"They did not fully inform Mr. Schenck that Mr. Lindsay had agreed to furnish the money necessary to enable the Independent Sewer Pipe Co. to carry through the contract with the Merchants Fireproof Bldg. Co.

"They did not fully inform Mr. Schenck that Mr. Lindsay, before going to New Orleans, had authorized Mr. Findley to telegraph him for more money in connection with the Merchants Fireproof Bldg. contract in case ,it was needed. .

"They did not inform Mr. Schenck that Mr. Lindsay had telegraphed the First Natl. Bank of L. A. that he expected to be able to take over the $7,000.00 loan by himself when he returned to Los Angeles.

"They did not inform Mr. Schenck that the resolution adopted by the Independent Sewer Pipe Co. Apr. 28, 1913, pledged to the First National Bank of Los Angeles the terra-cotta contract with the Merchants Fireproof Bldg. Co. as collateral for the said note ($12,500.00), or any other liability or liabilities, of the said corporation to the said First Natl. Bank of L. A. due, or to become due, *or that may be hereafter contracted.*"

Appellants contend first, that embezzlement was committed by plaintiff; second, that in any event there was probable cause for defendant, Davids, to swear to the criminal complaint; third, that no malice towards Murphy or Findley was cherished by either defendant; and fourth, that Lindsay had nothing to do with the matter except as a witness.

In support of their first contention appellants assert that Murphy and Findley wanted to borrow money for their company, the Independent Sewer Pipe Company; that they could not do so without Lindsay's indorsement; that he refused such indorsement unless offered some protection; that the corporation expected to collect in due course $33,990 under the building contract; that Murphy and Findley agreed that if Lindsay would indorse the corporation's note and the bank would loan twelve thousand five hundred dollars thereon, they would cause the corporation to hypothecate the building contract as collateral security to the bank for said note; that this was done and thereafter Murphy and Findley collected all the money due under the contract, and despite the protests of Messrs. Lindsay and

Davids, they placed it in the general account of the corpora-
tion and checked it out for general expenses, including their
own salaries. Further, they contend that it makes no dif-
ference whether or not the sum of four thousand dollars
specified in the complaint in the criminal action was appro-
priated to the personal use of Messrs. Murphy and Findley
or either of them, but that it is sufficient to satisfy the stat-
ute if (as they assert is the fact) it was appropriated to
any use or purpose "not in the due and lawful execution"
of the trust.' (Pen. Code, sec. 506.)

The trouble with the statement of facts set forth in the
opening brief of appellants is that it omits many essential
matters.

It appears from the record that there was testimony sup-
porting the following conclusions as to matters of fact:

From the organization of the Independent Sewer Pipe
Company in 1911 until February 16, 1915, M. W. Findley
was president, Lycurgus Lindsay (one of the defendants
herein) was vice-president and M. A. Murphy (plaintiff)
was secretary and treasurer. Defendant, Lycurgus Lind-
say, had been personally guaranteeing some of the loans
made to the corporation. Money had been borrowed from
the First National Bank, which was the holder of a note
for seventy thousand dollars, personally indorsed by Mr.
Lindsay, Mr. Findley and Mr. Murphy. A time came
when there was the prospect of a large contract for terra
cotta (the one afterward secured). Mr. Lindsay went to
the factory and talked to Mr. Findley, the president of
the corporation, from whom he learned that the corporation
had neither sufficient equipment nor funds with which to
undertake the project. He agreed to furnish the money
and finally it was determined that the corporation should
borrow twelve thousand five hundred dollars. Before this
transaction was consummated a resolution was duly passed
authorizing the borrowing of said sum and the pledging
with the First National Bank of the contract for terra cotta
as security for the corporation's note for twelve thousand
five hundred dollars "or any other liability or liabilities
of the said corporation to the said First National Bank of
Los Angeles, due or to become due or that may be hereafter
contracted." This resolution was thoroughly well known to
both defendant Davids and to defendant Lindsay (who is

the former's father-in-law). The note for twelve thousand five hundred dollars was indorsed like the one for seventy thousand dollars, by the president, vice-president and secretary of the corporation. Subsequently, and before any payments on the terra-cotta contract had been made, more money was needed by the corporation to carry on the business, and the president talked with Mr. Lindsay about raising it. The vice-president was about to leave the city, but he said that if the necessary money could not be raised without his guarantee to wire him for it. This was done and on October 9, 1913, the following telegram was received from New Orleans:

"First National Bank, Los Angeles, California.

"Findley wires me of needs for factory seven thousand dollars. I will guarantee same. Expect to be able to take *lone* over myself in return.

"L. LINDSAY."

The money was loaned upon the corporation's note for seven thousand dollars backed by the telegram. This note was not personally indorsed by either Mr. Murphy or Mr. Findley.

It will be seen from the foregoing that the assigned contract for about thirty-three thousand dollars was pledged as security equally for the notes for seventy thousand dollars, twelve thousand five hundred dollars, and seven thousand dollars.

On October 25, 1913, the first payment on the contract for terra cotta was made. The amount was for four thousand dollars (the very sum specified in the criminal complaint as embezzled by Messrs. Murphy and Findley). Subsequent installments were paid until the whole amount had been received by the corporation on April 9, 1914. This was all placed to the credit of the Independent Sewer Pipe Company in the First National Bank—a fact known to the defendants in this action. Indeed, E. M. Davids himself collected and deposited nearly twenty-seven thousand dollars of this money. He and his father-in-law both were in a position to know that this money was used in the operation of the business of the corporation. Both knew that the seven thousand dollars had been paid, before the arrest of the two officers of the corporation, from the funds to the credit of the Independent Sewer Pipe Company in

the First National Bank. It is to be remembered that this note carried no personal obligation (as did the other two) of the two officers, Findley and Murphy, who, under a general authorization of the corporation, signed the check for its payment. It was in evidence that the payment of this smaller note, instead of anything on account of the note for twelve thousand five hundred dollars, was approved by Mr. Lindsay and by the bank. Both E. M. Davids and Lycurgus Lindsay knew that part of the money collected on the contract for terra cotta was used in the ordinary business of the company. Indeed, the latter testified as follows: "Q. You did know, as a matter of fact, that what application had been made of that money was in the general running of the company and the paying of expenses, did you not? A. Yes, sir." It was not until after Mr. Lindsay had been compelled to pay the two notes for seventy thousand dollars and twelve thousand five hundred dollars that the prosecution was undertaken.

[1] From the foregoing it is quite evident that the jury was amply justified in believing, as did the magistrate before whom plaintiff (then defendant in the criminal case) was examined, that no criminal intent was proven on the part of Mr. Murphy, and that the application of the moneys received from the contract was with the knowledge and acquiescence of all the persons concerned. In this connection it is to be remembered that the assigned contract was in the bank's possession, and the bank had the right to collect and apply the moneys had it seen fit so to do.

We next will consider the position of defendants with reference to probable cause. Before the complaint in the criminal action was filed, both E. M. Davids and Lycurgus Lindsay were advised by Mr. Schenck and by certain prosecuting officers, yet the jury found, as we have indicated above, that full and free disclosure of all the facts was not made either to private or to public counsel, and that neither the complaining witness nor his father-in-law honestly believed either Mr. Murphy or his associate guilty of embezzlement.

There are elaborate discussions in the briefs upon the matter of the support (or lack of it) in the testimony for the special findings. It will not be necessary, however, to review the record in which, as respondent asserts, the

evidence concerning the special findings of the jury is sufficiently conflicting to warrant the court in refusing to interfere with said findings. If the defendants did not rely upon the advice of Mr. Schenck regarding the guilt of the president and secretary of the corporation of the crime of embezzlement, there was a want of probable cause which was sufficient to defeat the defense of "advice of counsel." The jury found that neither Mr. Davids nor Mr. Lindsay relied entirely on advice of counsel. That they did not rely upon the advice of counsel and did not believe in the guilt of Mr. Murphy and his associate were conclusions that the jury was justified in reaching. Although defendant Lindsay swore that he had nothing to do with swearing to the complaint, or suggesting that Davids swear to it, plaintiff showed that, upon cross-examination at the preliminary examination, he had made the admissions indicated by the following answers to the questions set forth below:

"Q. Didn't you suggest that it would be better for him to do it than you?

"A. I think I suggested—they were threatening about this case, if it was brought up they were going to sue me for damages. That is the only thing I talked about the matter.

"Q. And therefore that this prosecution should be commenced?

"A. I did not say anything about that.

"Q. Who did you say was threatening to sue you for damages?

"A. None of them threatened me, but that was the talk, and some of their friends came to me and said that if I took this up I would be laying myself liable for damages.

"Q. Did you tell that to Mr. Davids?

"A. I don't remember whether I told that to Mr. Davids.

"Q. It was a conversation with Mr. Davids I was asking you about.

"A. I think it was Mr. Davids spoke to me about it.

"Q. He reported it to you?

"A. Yes, sir."

At the trial of this case the same defendant, after stating that the prosecution had been commenced after the attorney employed by him had examined the books of the corporation, gave testimony as indicated below:

"Q. Did your attorney, after that examination, report to you that he had found any evidence that Mr. Findley or Mr. Murphy had converted any portion of that money to their own personal use?

"A. I do not remember whether—I couldn't say that they had.

"Q. Did your attorney report to you, after that examination, anything to the contrary, anything other than that they had deposited every cent of it in the First National Bank?

"A. They reported to me that they had not applied it on the note.

"Q. Simply that they had not applied it on the $12,500 note? He did not report to you that they had applied it to any purpose of their own?

"A. That I couldn't say; he did not report to me how they had applied it."

The evidence showed that defendant, Davids, had the same knowledge of the affairs of the corporation as did his father-in-law, and it follows that neither of them depended upon advice of counsel, knowing as they did that no crime had really been committed. [2] Whether or not defendants acted *bona fide* upon counsel's advice is a question for the jury. (*Potter* v. *Seale,* 8 Cal. 217.) [3] Advice of counsel is no defense if the person who pretends that he acted upon it did not believe the accused was guilty. (*Vann* v. *McCreary,* 77 Cal. 434, [19 Pac. 826].) We are convinced that the defense of "probable cause" in this case was properly held to be unavailing.

There was a showing of malice toward Messrs. Murphy and Findley. The arrest of plaintiff, Murphy, and Findley occurred after there had been litigation adverse to the interests of defendant Lindsay, which he believed to have been instigated by them. This, and other circumstances connected with the case, notably the continuance of friendly business relations among all the parties long after these defendants knew all of the facts concerning the alleged "embezzlement," justify the reasonable deduction that a desire for revenge, growing out of business differences, was the real motive for the prosecution.

That defendant Lindsay was something more than a mere witness in the criminal case was also properly deducible

from the evidence. Admittedly, he employed special counsel for · the prosecution and conferred with counsel and with his son-in-law upon the various aspects of the case. [4] True, he asserted that he believed that the prosecution, if any, would be by indictment, but the testimony was, we believe, sufficient to justify the conclusion that he was the real instigator of the prosecution by complaint.

Certain alleged errors of law are specified by appellants. First of these was the offering and receiving of certain portions of defendant Lindsay's testimony taken at the preliminary examination in the case of the *People etc.* v. *Findley and Murphy.* The contention is that such testimony may not be used unless the witness be deceased or otherwise unavailable (citing 2 Wigmore on Evidence, sec. 1416). The parts of the transcript admitted in evidence were not offered as a deposition in lieu of the testimony of a witness, but as admissions of the defendant Lindsay regarding his connection with the institution of the prosecution. [5] It was clearly admissible upon the issues joined by plaintiff's averment that he did take part therein and his own denial of that allegation. (Code Civ. Proc., sec. 1870, subd. 3; *Macomber* v. *Bigelow,* 126 Cal. 9, [58 Pac. 312].)

Testimony regarding plaintiff's good reputation in the community was admitted in advance of any attack by defendants upon such reputation. This is specified as error upon the authority of *Davis* v. *Hearst,* 160 Cal. 143–185, [116 Pac. 530], and 1 Wharton's Law of Evidence, sec. 50. Respondent's counsel contend that the rule in cases of malicious prosecution is different from that ordinarily applicable in other actions and that it admits proof of his good character as a part of plaintiff's case. In this behalf they cite *Thurkettle* v. *Frost,* 137 Mich. 115, [4 Ann. Cas. 836, 839, 840, 100 N. W. 283], and *Calhoun* v. *Bell,* 136 La. 149, [Ann. Cas. 1916D, 1168, 1169, [66 South. 761].

[6] We are constrained to follow the rule declared in the opinions in those cases, supported as it is by the great weight of authority that in suits for damages because of malicious prosecution, the good reputation of the plaintiff has a direct bearing on the question of probable cause and may, therefore, be proven in chief, especially when such reputation is known to the defendant or defendants.

[7] The court sustained respondent's objection to the question propounded by the attorneys for the defendants: "Did you honestly, in your conversations with them, state to them everything that you knew or had learned touching that matter?" (Whether Murphy was guilty of embezzlement.) The objection went to the word "honestly," as calling for a conclusion of the witness. It was for the jury to determine from the evidence whether or not defendants related their knowledge of plaintiff and his acts *honestly.* The objection was properly sustained. [8] His belief on the subject of plaintiff's guilt would have been admissible, (*Runo* v. *Williams,* 162 Cal. 444, [122 Pac. 1082]), but the question, in the form in which it was propounded, was vulnerable to the particular objection leveled at it.

It is next asserted by appellants that the question of probable cause was not determined by the court but was erroneously left to the jury. In this behalf certain instructions are quoted and criticised. For example, the jurors were instructed as follows:

"In order to determine that the plaintiff was guilty of the crime of embezzlement, it must appear from a preponderance of the evidence in this case that the plaintiff had under his control the sum of $4,000 on or about the date charged as trustee, or one of the trustees or agents . . . and for the use of . . . and having it so under his control, fraudulently and unlawfully appropriated it to some use or purpose not in the due and lawful execution of his trust." This is declared by appellants to be leaving to the jury the question of the existence or nonexistence of "probable cause," and, therefore, erroneous; and *Ball* v. *Rawles,* 93 Cal. 222, [27 Am. St. Rep. 174, 28 Pac. 937], is cited as holding that the question of "probable cause" is one of law for the court. The criticism is without merit. One of the pleaded assertions of the defendants was that plaintiff was in fact guilty of embezzlement. [9] The instruction quoted above, and others of similar import, properly left to the jury the solution of this issue.

Other instructions contained the statement that for the plaintiff to prevail certain things must concur, among them being that the defendants acted in charging plaintiff with crime "without probable cause," but again and again, throughout the charge, the jurors were told that the question

of probable cause was one of law with which they had nothing to do—that they were to determine questions of fact upon which the court must base its decision as to the probable cause or want of it.

By another instruction upon the defense that advice of counsel had been followed, the jurors were told that defendants, "thus seeking to justify their acts in the premises," must not only show by a preponderance of evidence that they disclosed to counsel all material facts known to them, "but, also, if they had reasonable ground to believe that other facts existed tending to exculpate the person accused, they should either themselves make inquiry as to such other facts or disclose their belief of such other facts to said counsel that such counsel might have an opportunity to make such inquiry." This instruction was not opposed to the doctrine of *Dunlap* v. *New Zealand Fire and Marine Ins. Co.*, 109 Cal. 365, [42 Pac. 29]. **[10]** In that case it was held that a defendant is not required, in addition to stating to his legal adviser all the material facts of the case of which he has knowledge, to go further and use diligence in the procurement of other facts. But if he have reason to believe that there are other facts bearing upon the guilt or innocence of the accused, he must either disclose that belief or himself make inquiry to ascertain the facts in relation to the matter. This distinction is clearly defined in the opinion in *Scrivani* v. *Dondero,* 128 Cal. 31, [60 Pac. 463]. Probably, the instruction which we are now considering was prepared with that opinion before the draftsman.

We do not find it necessary to comment upon all of the instructions to which appellants present objections. We have examined the charge, which, as a whole, very fully, fairly, and correctly stated the rules of law properly to be observed by the jury.

Mr. Findley, while on the witness-stand, was asked about a conversation with Mr. Davids. Without objection he detailed a part of the conversation involving a statement that "Mr. Lindsay was going to bring a criminal action." At this point the court asked if there was any objection, and, after some discussion, witness proceeded to testify, without objection, after the court had told the jury that the conversation could "only, bind Mr. Davids and not Mr.

Lindsay.'' The conversation as related, however, involved alleged statements by defendant Davids, regarding defendant Lindsay, among others, that the latter was not going to institute the action himself but was going to make Davids do it. After these statements had been detailed by the witness, counsel moved that ''the statement of what Davids said be stricken out so far as Mr. Lindsay is concerned, and that the jury be admonished to disregard it as to Mr. Lindsay.'' To this motion the court replied: ''It does not refer to anybody but Mr. Lindsay and should not have been admitted at all, but you did not make an objection and I am not going to strike it out now.'' The ruling was proper under the circumstances. [11] The jurors had been instructed that defendant Lindsay was not bound by the conversation. That was all that the court could well do if the conversation was admitted at all, and it had been admitted without legal objection.

No other alleged errors demand discussion.

The judgment is affirmed.

Lennon, J., and Wilbur, J., concurred.

Hearing in Bank denied.

All the Justices concurred.