[Civ. No. 5984. Third Appellate District.—February 10, 1939.]

W. N. PORTMAN et al., Appellants, v. M. J. KEEGAN, Respondent.

Huston, Huston & Huston for Appellants.

H. W. McGowan and E. Vayne Miller for Respondent.

TUTTLE, J.—Plaintiffs, who are husband and wife, brought this action to recover damages alleged to have been inflicted upon them by defendant through a physical assault. The latter filed a cross-complaint containing several causes of action, and the jury brought in a verdict in favor of the cross-complainant for damages in the sum of $12, arising out of the breaking of a window in the door of his automobile, and also allowing him damages in the sum of $2,870 on a cause of action based upon malicious prosecution.

The jury rendered the following verdict:

"We, the jury, duly impaneled in the above entitled action, do find for the cross-complainant, M. J. Keegan, against cross-defendant, Elizabeth Portman, and assess his damages as follows:

"On the first cause of action for assault upon his person:

"First: Actual damages in the sum of $ None;

"Second: Exemplary and punitive damages in the sum of $ None;

"Third: Total damages $ None.

"On the second cause of action for injury to his automobile:

"First: Actual damages in the sum of $12.00;

"Second: Exemplary and punitive damages in the sum of $ None;

"Third: Total damages $12.00.

"On the third cause of action for malicious prosecution: Damages in the sum of $2870.00.

"E. L. BETTERTON, Foreman."

Judgment was entered by the clerk in exact conformity with the verdict.

It appears that for a number of years plaintiffs and defendant owned adjoining ranches. They were neighbors, however, only in the matter of proximity. In all other respects the record shows that they lived in a state of constant belligerency. Ill-will and bad faith were engendered by numerous petty occurrences which took place between them, and which finally culminated in the episode which gave rise to this controversy. Defendant testified that at one time plaintiffs caused his son to be arrested; that plaintiffs cut his telephone service, and that plaintiffs continually impounded his cattle when they were loose upon the public highway. On the day when the alleged assault took place, defendant testified that his cattle were missing from his ranch. He thereupon telephoned to plaintiffs' home, and Mrs. Portman informed him that the cattle were in the Portman corral. Defendant thereupon went to plaintiffs' home, and was met by Mrs. Portman, who informed him that the cattle were in their corral, but that no charges would be made by the Portmans for looking after them. Defendant was accompanied by a friend, who went across the field and started to open the gate of the corral and drive the cattle out on the highway, when they were met by plaintiffs, who refused to allow the cattle to be taken away. At this point defendant went over to the corral and got into a verbal altercation with Mr. Portman. Without further ceremony defendant struck Mr. Portman with his fist and knocked him to the ground. After this there was a general melée, in which Mrs. Portman joined, and also the friend of defendant. After it was all over it appeared that Mrs. Portman received a black eye and suffered from shock; defendant lost his hat and broke his pipe. Just as defendant was about to leave the premises in his automobile, Mrs. Portman hurled a rock at him, breaking the glass in one door. Defendant stated that at no time did he have a knife in his hand. Plaintiffs, a short time thereafter, proceeded to the office of the local justice of the peace and swore to a complaint charging defendant with assault with attempt to commit murder. In relating their story to the justice of the peace, plaintiffs made the statement that defendant, during the altercation, had an open knife in his hand, and stated that he would kill them. Mrs. Portman then swore to a

complaint charging defendant with the crime of assault with intent to commit murder. A warrant was issued and defendant was arrested. He was immediately released on bail. A preliminary examination was held, and it terminated in the dismissal of the charge.

■ It is first contended by plaintiffs that the verdict is fatally defective on account of the fact that it failed to make any adjudication of the issues raised by the complaint. An inspection of the verdict shows that the only issues adjudicated were those raised by the cross-complaint and answer thereto. We do not believe, however, that this in any way invalidates the finding of the jury with respect to those matters. If there was any error committed with respect to the form of the verdict, or the failure of the jury to find on certain issues, we are of the opinion that such error was waived by the failure of the plaintiffs to make any objection to the form of the verdict when it was brought into court and announced. The code expressly provides for the sending out of the jury where the verdict announced fails to determine the issues submitted. (Sec. 619, Code Civ. Proc.)

In the case of *Benson* v. *Southern Pac. Co.*, 177 Cal. 777–780 [171 Pac. 948], the jury failed to bring in a verdict for or against the employee of the defendant company. The court held that it was the duty of the defendant to call the attention of the court to the matter at the time the verdict was returned, in order that it might have been corrected before the jury was discharged, and that under such circumstances the defendant would not be heard to urge the point for the first time on appeal. ■ This leaves the instant case in the situation where there has been no adjudication of the issues raised on the complaint, and the plaintiffs are therefore entitled to have the trial of those issues set down and heard before a court or jury in the usual course. The effect of the waiver under these circumstances is simply to estop the plaintiffs from questioning the validity of the verdict as far as it went, but it does not affect the right of the plaintiffs to have the issues raised on their complaint submitted for an adjudication. It will be further noted that the judgment entered by the clerk goes no further than the verdict, and it cannot be said, so far as the record goes, that the issues raised by the complaint were ever adjudicated.

In view of the foregoing, we deem it unnecessary to consider the other points raised by appellants with reference to the conclusive character of the evidence introduced in plaintiffs' case, because those issues were, as we have stated, never finally adjudicated.

■ It is contended by appellants that the verdict based on malicious prosecution is not supported by the evidence. It is the elemental rule, in cases of this character, that plaintiff must prove malice and want of probable cause. (*Perry* v. *Washington National Ins. Co.*, 14 Cal. App. (2d) 609 [58 Pac. (2d) 701, 59 Pac. (2d) 158].) First, as to malice: ''The existence of malice may be inferred by the jury from acts or declarations of the defendant expressing or indicating prejudice, ill-will or malicious motive in the matter of the prosecution. And while malice is not presumed to exist from want of probable cause as a matter of law, it may be inferred therefrom by the jury.'' (16 Cal. Jur. 746, sec. 15.) We are of the opinion that there is sufficient evidence here to justify the jury in finding that the prosecution was inspired by malice. In addition to the acts of plaintiffs testified to by defendant and mentioned above, there is the fact that the jury could have concluded that the story of the knife, as related to the justice of the peace, was untrue, and that it was inspired by ill-will and bad faith toward defendant. This matter is fully discussed later. Bringing a charge of assault with attempt to murder, when (if the jury believed defendant), there was absolutely no grounds for such a charge, goes to establish want of probable cause, and would support a finding of malice.

As to the evidence of want of probable cause, it would seem to be sufficient to support the verdict. What we have said on the question of malice, and our observations later on the subject of good faith, is applicable to this contention.

■ One instruction is questioned by appellants. It reads as follows:

''(Defendant's instruction.) The court instructs the jury that if the cross-defendant Elizabeth Portman knew that her only remedy was in civil action and that she wilfully and maliciously commenced the criminal proceeding against the cross-complainant, M. J. Keegan and the said criminal proceeding terminated in favor of the cross-complainant M. J.

Keegan, then you will find for the cross-complainant, M. J. Keegan. (*Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143].)''

It is true, as stated by appellants, that this formula instruction omits the question of want of probable cause. It appears, however, that the jury were fully instructed to the effect that no recovery could be had unless want of probable cause was proven, and that such element was indispensable in an action of this character. It is an elemental rule that the instructions must be read as a whole, and if the jury is fully and fairly instructed on the law of the case, one instruction, which may not embody all the legal phases of the case, cannot be singled out and urged as prejudicial error. We find that such rule is applicable here. Furthermore, an examination of the entire record fails to disclose that any prejudice resulted from the giving of the above instruction.

 It is contended by appellants that they acted in good faith on the advice of the justice of the peace, after making a full, fair and complete disclosure of all the facts before him. While this is a well-recognized defense in an action of this character bearing on the question of good faith and want of probable cause, the question whether or not such disclosure was made in a fair, full and complete manner was one for the jury. (*Starkweather* v. *Eddy,* 210 Cal. 483 [292 Pac. 467]; *Seabridge* v. *McAdam*, 108 Cal. 345 [41 Pac. 409].)

In the Starkweather case plaintiff was occupying a cabin on premises claimed by defendant. The latter proceeded to the building. Plaintiff was inside. He saw defendant approaching with a box of dynamite and some fuse, and heard the latter state that he was going to explode the dynamite under the cabin in order to dislodge plaintiff. The latter came out of the cabin armed with a revolver, and ''covered'' defendant, who thereupon left the premises and proceeded to the district attorney, to whom he related his story. He then, on the advice of the officer, swore to a complaint charging plaintiff with the crime of assault with a deadly weapon. Plaintiff was tried on the charge and found not guilty. He then brought an action for malicious prosecution. The trial court found that defendant fairly and truly related the facts to the district attorney. The latter took the witness-stand at the trial and testified that defendant had *failed to mention the dynamite incident*. The Supreme Court held that the finding mentioned was not supported by the evidence. In

the second case cited above the following quotation is pertinent here:

"Appellants also claim protection from the fact that they acted on the advice of the district attorney. But if, as the jury must have found, they falsely stated the facts, that advice was no protection." (Citing *Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143]; *Franzen* v. *Shenk*, 192 Cal. 572–576 [221 Pac. 932].)

The justice of the peace gave the following version of what took place when appellants applied to him for a criminal complaint:

"They both came and they said they wanted to get a warrant—warrant of arrest out for Mr. Keegan; I am not sure if they called him by his first name or not, Mat. Keegan; anyway they meant Mr. Keegan; so I says, what is the charge; and if I remember right he said, he beat up on my wife; and Mrs. Portman at that time raised her hat up and showed me a lump on her forehead; then, I says, I think I told them at that time that it could be a battery charge; then they informed me that Mr. Keegan had a knife in his hand at the time he made that assault, and I think that Mrs. Portman made the statement—I am not sure whether it was Mr. or Mrs. Portman; Mr. Portman did most of the talking at that time—said he threatened to kill Mrs. Portman at the same time."

After hearing respondent's testimony, where he stated positively that at no time did he have a knife in his hand, or attempt to use a knife, the jury could reasonably have concluded that the statement made to the justice of the peace by appellants that respondent had a knife in his hand and threatened to kill Mr. Portman, was untrue. Advice, under such circumstances, is no protection. We cannot say, as a matter of law that the jury was compelled to find for appellants on this question of fact. Having obviously found that defendant was unarmed, and that there was no reasonable or probable cause for charging him with assault with intent to murder, and there being sufficient evidence to support such finding, we are not at liberty under such circumstances to disturb it.

It is finally contended by plaintiffs that the damages are excessive, in that the evidence is insufficient to support an award of $2,870 damages. With this contention we agree.

There is no evidence that defendant, after his arrest, was confined in jail, or subjected to any real hardship or act of oppression, or injured in his business or social standing. After considering the entire record, it does not appear that the verdict in this case was the result of a sober and dispassionate judgment, but rather, that the jury was moved by facts and circumstances extraneous to the case, and not appearing in evidence. (8 Cal. Jur. 834.)

It may be pointed out that, while at first blush it might be inferred that there is some inconsistency in allowing damages for the malicious prosecution and permitting plaintiffs to pursue their action for damages, in reality there is none. The cause of action stated by plaintiffs is based upon a simple assault upon them. It may be true, as plaintiffs contend with considerable justification, that the assault was not made by them, but by the defendant. If such be the fact, there would still be no justification for the prosecution of defendant upon a charge of assault with intent to commit murder, and there would be no inconsistency in a finding by the jury to that effect. It is obvious that if plaintiffs had brought a charge of simple assault against defendant, an entirely different situation would have been presented.

We have examined other points raised by appellants, but none of them appears to have any substantial merit.

It is therefore ordered that if, within fifteen days from the date of the filing of this opinion, the defendant file a written remission of the sum of $1400 from the amount of said judgment, that the judgment be affirmed. Otherwise, the judgment will be reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1939.