[L. A. No. 10525. In Bank.—October 17, 1930.]

J. W. STARKWEATHER, Appellant, v. F. J. EDDY, Respondent.

Harry J. Miller, G. M. Caldwell and C. S. Mauk for Appellant.

F. E. Davis for Respondent.

SHENK, J.—This action is one for malicious prosecution growing out of the acquittal of the plaintiff of a charge brought by the defendant of assault with a deadly weapon. The case was tried before the court without a jury, judgment being rendered in favor of the defendant, and the plaintiff appeals.

The assault charge arose out of the following facts: The plaintiff was a large stockholder in the Minarets Mining Company, a corporation, whose principal properties are located in the high Sierras in Mono and Madera Counties.

For several years prior to the events about to be recounted, the plaintiff and the defendant had been connected with opposing factions, both sides being desirous of gaining control of the corporation. Early in 1921 the directors of the corporation had appointed the defendant president and general manager. This appointment the plaintiff contended was not valid for the reason that the board of directors making the appointment had not been validly elected.

At the mining property, it appears, there were two cabins, one known as the lower cabin close to the workings of the mine, and the other known as the upper cabin, being some distance from the mine. The upper cabin had been formerly owned and occupied by the plaintiff, but had later been sold to the corporation. Even after such sale the plaintiff on occasions had occupied the cabin either while doing assessment work at the mine, or while running a guide business in the mountains.

It appears that the 1920 assessment work at the mine had not been completed, and that in order to preserve the property that work, under the law, had to be started by July 1, 1921. About the middle of May, 1921, the plaintiff had taken possession of the upper cabin. There can be no doubt that he intended to relocate the claims for himself and friends if the corporation failed in its assessment work. In addition to this purpose the plaintiff had occupied the cabin with the intention of carrying on his guide business, having brought his horses and sleds with him.

On June 13, 1921, between the hours of 8 and 9 o'clock A. M., the defendant, accompanied by several employees, arrived at the upper cabin, intending to start on the assessment work. They noticed unmistakable indications that the cabin was occupied, but no one answered their calls and knocks. As a matter of fact, the plaintiff and his son were in the cabin, but for their own reasons did not choose to answer. The defendant and his men then proceeded to a near-by barn and returned to the upper cabin a little later. One of the defendant's men was at that time carrying a box containing twenty-five pounds of dynamite, and another was carrying a long coil of fuse. All this could be seen by the plaintiff from the cabin. Upon arriving in front of the cabin one of the men, and probably the defendant himself, suggested that the dynamite be put under

the house and touched off, in order to bring out the occupants. The plaintiff and his son, upon hearing these threats, immediately vacated the premises *via* the windows. The plaintiff was·armed with a revolver, while his son was armed with a rifle. With these weapons they ''covered'' the defendant and his men, who, except for the dynamite, were unarmed. The defendant and his men cried out that they were unarmed, and that the dynamite threat was only a joke, whereupon the plaintiff's son said the rifle and pistol were also a joke, and offered his rifle to the defendant, who refused it. The plaintiff and the defendant then engaged in a short dispute, the defendant finally leaving with a threat to return with the sheriff and put the plaintiff in jail. The defendant thereupon hastened to Bridgeport, the county seat of Mono County, and laid some of the facts, at least, before the district attorney, emphasizing the gun incident, but, as will appear, placing very little emphasis on the dynamite incident. The defendant then, upon the advice of the district attorney, charged the plaintiff with an assault with a deadly weapon, and a warrant was issued. The plaintiff was thereupon arrested and lodged in jail and kept there over two days. Upon his preliminary hearing he was released on his own recognizance and upon the subsequent trial found not guilty. The plaintiff thereupon brought this action for malicious prosecution against the defendant, the complaint being filed in 1922, but the action not being tried until 1926. The answer of the defendant admitted all of the allegations of the complaint save that the defendant had acted maliciously and without probable cause. During the course of the trial the defendant offered in evidence the complete record of an action brought in the superior court of Mono County entitled *Minarets Mining Co.* v. *Starkweather,* in which action the title of the corporation was quieted against Starkweather. One of the findings in that action (which action was not commenced until 1923 and judgment rendered in 1924) stated that Starkweather was then and had been since 1917 a trespasser on the property. The trial court believed that this judgment, from which no appeal was taken, was binding and conclusive in the malicious prosecution action for.some reason that does not appear.

Before discussing the points involved on this appeal, some general remarks are necessary concerning the nature of an action for malicious prosecution of a criminal action. ■ In such cases it is well settled that even though the person so charged is found not guilty on the criminal charge, he cannot recover unless he prove both malice and want of probable cause. Although malice may be inferred from lack of probable cause, the burden rests on the plaintiff to prove the above two elements, and unless he does so he cannot recover. (*Lee* v. *Levison*, 173 Cal. 166, 168 [159 Pac. 438]; *Runo* v. *Williams*, 162 Cal. 444, 450 [122 Pac. 1082]; *Pickering* v. *Havens*, 70 Cal. App. 381 [233 Pac. 346]; *Franklin* v. *Irvine*, 52 Cal. App. 286 [198 Pac. 647]; *Redgate* v. *Southern Pac. Co.*, 24 Cal. App. 573, 583 [141 Pac. 1191].) ■ It is also well settled that evidence of the fact that the defendant brought the charge on the advice of counsel or on the advice of the prosecuting officers is admissible on the question of probable cause, but in order to constitute a defense it must affirmatively appear that the defendant made a full, fair and complete disclosure of all the facts, and acted in good faith on the advice. (*Dunlap* v. *New Zealand F. & M. I. Co.*, 109 Cal. 365, 369 [42 Pac. 29]; *Sandell* v. *Sherman*, 107 Cal. 391, 397 [40 Pac. 493]; *Hewelcke* v. *Shipman*, 65 Cal. App. 257, 265 [223 Pac. 1019]; *Braga* v. *Ponte*, 50 Cal. App. 94, 98 [194 Pac. 514]; *Jirku* v. *Brod*, 42 Cal. App. 796, 798 [184 Pac. 413]; *Montz* v. *Nevins*, 40 Cal. App. 202, 207 [180 Pac. 537].) ■ In this case the trial court found that the defendant "did then and there fully, fairly, truthfully, impartially and correctly and without malice state and relate to said district attorney each, all and every of the facts and circumstances, and all of the evidence in relation to said offense." This finding is attacked by the plaintiff as unsupported by the evidence. In this we agree. The district attorney was called as a witness by the defendant. On his direct and cross examinations he was thoroughly interrogated by both counsel as to his conversation with the defendant and in no way even mentioned that the defendant had told him of the dynamite incident. That incident was very material, inasmuch as no assault was made if the plaintiff acted in self-defense. Upon being recalled later in the trial he did testify that "I understood something about

there was dynamite there." The defendant testified: "I told him about the joke about the dynamite. I might have told him that we had a box of powder and I might not." This evidence does not appear to us to be sufficient to sustain the finding above quoted.

Another material finding is not supported by the evidence. The court found "that the defendant demanded of the plaintiff in a quiet and peaceful manner possession of said property. . . . That thereupon said plaintiff and his said·son without just cause, excuse or provocation drew and leveled the said firearms at and upon the defendant." If that finding is supported, the plaintiff was guilty of the assault. But it is admitted that he was found not guilty. The fact is, however, that the evidence does not support the finding, the evidence of the defendant himself being contrary thereto. The defendant in his direct examination, after testifying that he and his men had gone to the lower cabin and then returned to the upper cabin and again knocked on the door, stated: " . . . not getting any response we rested a while; and one of the boys says, 'Let's put some dynamite under the cabin and wake them up.' Q. By the Court: And did you have dynamite with you? A. Yes sir. There was about a half a box of dynamite that had been in the tunnel all winter and was wet and had been frozen. We brought it up—I had one of the boys bring it up. And we set it down when we was waiting to see if anybody was there. And one of the boys had a roll of fuse on his arm that was in the tunnel, but we had no caps. . . . Q. By Mr. Davis: . . . What was said then on that occasion? A. Why, I think that remark [about placing the dynamite under the house] was made by two or three different ones, and it might possibly have been made by myself. . . . And soon after that remark was made one of the boys had a book he had gotten at the lower cabin. He threw the book on the porch. And the next instant we faced guns. . . . "

Moreover, the defendant corroborated the testimony of the plaintiff that immediately upon the defendant's crying out that he was unarmed, and stating that the dynamite threat was a joke, the plaintiff's son stated that the guns were a joke, and offered the defendant his rifle, which was refused. From that testimony we do not perceive any such "quiet and peaceful" demand as is described in the finding above

quoted, nor do we find any evidence to support the finding that the plaintiff acted without "excuse or provocation." When we consider the above testimony in connection with the long animosity that existed between these parties it would appear that the plaintiff was amply justified in believing that the defendant was going to carry out the threat and therefore acted in self-defense. At any rate, the finding above quoted is not supported by the evidence.

■ In another respect the trial court was in error. As stated above, the defendant introduced in evidence the entire record of a quiet-title suit commenced in 1923 by the Minarets Mining Company against the plaintiff, and in which the judgment was rendered in 1924 in favor of the corporation. In that action there was a finding that the "possession of said defendant [the plaintiff herein] . . . since March 17, 1917, was unlawful and wrongful. . . . " The trial court evidently believed that that finding in the quiet title action filed after the facts herein involved took place and between different parties was decisive of the malicious prosecution action. On different occasions the court stated: "The court is bound by that judgment as it stands now." And again: "I want to say frankly to you gentlemen I will not overrule that judgment the way it stands, and if that judgment stands this case is dismissed." So impressed was the trial judge with the judgment that he granted a long continuance until the entire record could be produced. We cannot discover any reason sustaining the court's viewpoint that the judgment was binding in this case. Assuming that the judgment was *res judicata* as to the point that the plaintiff herein on June 13, 1921, was a trespasser on the property (which point we do not find it necessary to decide), how that fact could be conclusive on the issue of whether the defendant acted without malice and with probable cause in charging the plaintiff with an assault with a deadly weapon, does not appear. To state the proposition is to answer it. Any such theory was and is incorrect.

For the foregoing reasons the judgment must be reversed. In so doing we in no way hold that the plaintiff has, upon the evidence produced, sustained the burden cast upon him in such an action. That is a question to be decided on the new trial, if one be had. We hold that the enumerated

findings are not supported by the evidence, and that the trial court proceeded on an erroneous theory under which the plaintiff's testimony could be given no weight.

The judgment is reversed.

Richards, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.