[Civ. No. 4284. Third Appellate District.—May 22, 1931.]

ROSE E. GOODING, Respondent, v. HAROLD McALIS-TER, Appellant.

Gabriel C. Duque and A. G. Ritter for Appellant.

C. A. Ballreich and Walter S. Coen for Respondent.

MR. JUSTICE PLUMMER Delivered the Opinion of the Court.—The plaintiff had judgment against the defendant in an action for malicious prosecution, from which judgment the defendant appeals.

The record shows that on or about the fourteenth day of September, 1927, the plaintiff was arrested upon a complaint sworn to by the defendant charging her with stealing the sum of $152.05. The arrest was followed by a preliminary hearing, where the plaintiff was discharged. At the time of the arrest the plaintiff was a woman of about fifty-nine years of age; had lived in California between forty-two and forty-three years; was a widow and had one married daughter.

The jury returned a verdict in the sum of $7,500, which verdict was reduced by the trial court to the sum of $1500.

The arrest arose out of the transaction relating to the sale of the furniture of a certain apartment house made by the plaintiff to the defendant. The record shows that at the time of the sale the sum of $152.05 was due to the Broadway Department Store. The transcript mentions the fact that the sale of the apartment house and furniture therein involved the sum of $20,600. Just how much of this sum was paid to the plaintiff cannot be ascertained from the record.

At the time of the sale and purchase of the apartment house and furniture the plaintiff executed and delivered to the defendant a bill of sale for the furniture contained in all the apartments, being twenty-two in number, of the building referred to. The concluding paragraph of the bill of sale contains the following words: "And said first party does, for her heirs, executors and administrators, covenant and agree to and with the said party of the second part, his executors, administrators and assigns, to warrant and defend the title to said property, goods and chattels hereby conveyed, against the just and lawful claims and demands of all persons whomsoever." The bill of sale was executed

on the twentieth day of March, 1927. Some time after the execution of the bill of sale, the defendant discovered that there was a balance due upon the purchase price of the furniture, and thereafter had a conversation with the plaintiff in relation thereto, at which time the plaintiff promised to pay off the balance due in installments. The record shows, however, that the defendant paid the department store for the remainder due upon the furniture, and thereafter, and on the fourteenth day of September, 1927, had the defendant arrested, as hereinbefore stated, charging her with theft of $152.05. Almost immediately following the discharge of the plaintiff upon her preliminary hearing this action was instituted.

Upon this appeal it is insisted that the defendant acted upon probable cause and upon the advice of counsel, and that there is no showing of malice. Upon the record before us there is absolutely no showing of any fraudulent representations, or of any misrepresentations having been made by the plaintiff to the defendant of or concerning her ownership in or to the furniture covered by the bill of sale, or of any unpaid balance of the purchase price thereon. All that the record does show is that the defendant claims to have overheard the plaintiff state to a witness by the name of Bandy, that the title to the furniture was clear. The witness Bandy testified that such a statement was made to him, but that he did not know of the presence of the defendant. The plaintiff denied ever making the statement. It is clear, however, that the plaintiff and the defendant never had any conversation about the furniture and never had any conversation of any kind between them until on or about the twenty-fifth day of May, 1927, long after the time of the making of the alleged fraudulent representations.

■ The main contention of the appellant for reversal is that he acted upon the advice of counsel in causing the arrest of the plaintiff, and was therefore entitled to a judgment in his favor, and cites 16 California Jurisprudence, page 741, where the rule is thus stated: "If the defendant in an action for malicious prosecution shows that, before commencing the prosecution alleged to have been malicious, he was advised by counsel, after a full and fair disclosure of all the facts within his knowledge, that he had a good cause of action or, if the prosecution was of criminal pro-

ceedings, that the crime had been committed and the proceedings would be justified, and shows that he acted upon the advice in good faith, he has made out a complete defense to the action.'' To entitle a defendant to this defense it must be shown that his acts conform strictly with the rule of law just stated. If it does not conform thereto, the defendant cannot rely upon the advice of counsel. Some of the cases go further and hold that the defendant must show that he believed the plaintiff guilty, and that the question of whether the defendant so believed is a question of fact for the jury in the event of a conflict in the testimony.

Before setting forth excerpts from the testimony, it is proper to state that whatever the civil liability of the plaintiff may have been in the premises, there is absolutely no showing whatever as to the commission of any crime or the stealing of any money by the plaintiff from the defendant. There were no representations, as we have said, made by the' plaintiff to the defendant; there was no conversation of any kind whatsoever between the parties to the bill of sale, the whole transaction having been carried on through a third party. From this it follows that if the defendant, in seeking advice, stated to counsel that misrepresentations had been made to him by the plaintiff, he was not making a full, fair or truthful statement of the facts and circumstances surrounding the transaction, and any advice which he obtained would therefore not have a foundation upon which to rest, necessary to entitle the defendant to a judgment in his favor on the ground that he acted upon the advice of counsel.

The transcript shows that the defendant sought the advice of John J. Hamilton, one of the prosecuting officers of the city of Los Angeles. Hamilton's testimony as to the statements of the defendant is set forth herein as follows: ''The question of whether or not there was any conversation, frankly I do not remember, that is, aside from the bill of sale, aside from the papers, and any representations that Mr. McAlister might have said at that time that she made him personally by word of mouth, aside from the papers, I am not positive at this time; I can't honestly say whether such representations were made, although I believe they were. Q. Was the matter of whether or not any specific

representations were made, considered by you in connection with drawing the complaint on that theory? A. I believe it was, your Honor, but I am not positive just what, if anything, was said along those lines. I believe there was; that must have been taken into consideration, but I am not positive, though, to what extent it was; I can't recall just what was said about that; that occurs to me as being part of the reasons why the complaint was issued. I don't believe that the complaint would have been issued on the bill of sale alone; I can't swear what was said or just exactly what was taken into consideration at that time, to be perfectly frank about it. . . . That I am not positive whether I decided it, or whether one of the others in the office did so. I am the one that issued the complaint, but whether or not I was directed by one of the superior officers in the office, I do not recall positively. Q. As I understand it, Mr. Hamilton, you feel now that there must have been some talk as to some representations which Mr. McAlister said that Mrs. Gooding had made to him, aside from the written bill of sale, or you would not have allowed the complaint to be issued? A. I had attained the conviction along those lines in my mind, but I am not positive of it. Q. I presume that you had, before issuing this complaint, referred to the statute which defines obtaining money or property by false representation? A. Yes. Q. And had in mind that the representations must have been made at the time for the purpose of obtaining a credit, knowingly and designedly made? A. Yes. Q. And must have been relied upon by the party advancing the money or giving credit at the time? A. Yes. Q. And therefore you feel now certain that he did tell you that Mrs. Gooding had so represented to him? A. I don't recall positively what, if anything, he said along those lines at this time. Q. Well, then, I understand that you think he told you those things, but you can't recall what they were; that is, the representations made by Mrs. Gooding aside from those contained in the bill of sale? A. I am fairly sure that he did; further than that, I can't swear to it." After stating that he had no personal conversation with Mrs. Gooding with respect to whether she did or did not own the furniture, the defendant, among other things, testified as follows: "Q. Now, I understand you to say that you based your charge against

Mrs. Gooding on the fact that the bill of sale warranted title to the furniture in the house, by Mrs. Gooding, and also the conversation you overheard between Mrs. Gooding and Mr. Bandy in the escrow room of the Security Bank; is that true? A. No. Q. All right. If there was anything else that you relied upon, please state it? A. The escrow instructions; the conditional contract of sale from the Broadway Department Store, sold to Mrs. Gooding; the conversation that I had with Mr. Berger; the conversation I had with Mrs. Gooding when I went out there and tried to get her to pay the bills. That was the conversation I related in which she said she didn't know she had signed any bill of sale. I claim she obtained something from me by false representations that she owned the furniture. Those representations were made by the escrow instructions, by the bill of sale, by the conversation I overheard. I am talking about representations and nothing else; any other representations made by anyone at any time; I can't think of other representations now. Q. Did you have any more at the time you talked to Mr. Hamilton? A. I cannot think of it now, no. Q. You told Mr. Hamilton simply that she was giving you a bill of sale, did you? A. A bill of sale. Q. And did you say anything to him about any conversation with Mrs. Gooding? A. I don't remember that. Q. You don't remember telling him? A. No. Q. You don't think you told him, do you, that you overheard her telling Mr. Bandy that these goods were free and clear? A. I don't remember. Q. You don't think you told him that? A. I do say I don't remember all the conversation. I remember I laid all the documents I had in the case before Mr. Hamilton, and I tried, I relied solely upon the documents, and I tried not to put in hearsay evidence. Q. Did you take into consideration, in buying the apartment or the furniture, any statements made by Mrs. Gooding outside of your presence, that had been reported to you by anyone? A. Well, I might have.''

The record further shows that the defendant had a conversation with an attorney by the name of Spratlen, and also with an attorney by the name of Leake, both of whom advised him not to have the plaintiff arrested. The testimony of Mr. Leake is as follows: ''Q. Well, you may state whether or not you had a conversation with Harold McAlister in

your office in the Chester-Williams Building on the 25th day of August, in substance as follows, Mr. McAlister saying to you, 'I am going to have Mrs. Gooding arrested because she has not paid the bill at the Broadway Department Store'; to which you replied, 'You had better not do that; you will get in trouble; you have no criminal charge against her'; to which McAlister replied, 'Well, I am going to do it anyway.' That, or that in substance? A. That is the substance, yes.''

Mr. Spratlen's testimony was substantially as follows: "Mr. McAlister said to me, 'I have paid the Broadway Department Store bill'; to which I replied, 'What did you do that for?' To which he, Mr. McAlister, said, 'Well, I wanted to pay that; I can have her (referring to Mrs. Gooding) put in jail for that; she has got to get out of there and give me possession of that property.' ''

Mr. Coombs, an attorney, testified as follows: "At the time of the trial, shortly before the trial in Division 7 of the Municipal Court of Los Angeles County, Mr. McAlister, the defendant, had a conversation with me in which he said to me in substance, 'If Mrs. Gooding will deliver possession of the apartment occupied by her, and give me the vacuum-sweeper, I will dismiss this case'.'' The defendant denied having conversation with the attorneys in which he was advised not to institute proceedings. The truth as to these matters, of course, was a question of fact for the jury.

The excerpts of the testimony which we have set forth show very clearly that the prosecuting officer did not base his advice simply upon the bill of sale, and that there must have been some statements made by the defendant as to representations made by the plaintiff prior to the execution of the bill of sale, all of which justified the jury in coming to the conclusion that the defendant did not make a full, fair and truthful statement of all the facts concerning the transaction to attorney Hamilton before Hamilton gave him advice as to instituting criminal proceedings. ■ The law is well established that unless the defendant discloses all the facts within his knowledge to the attorney from whom he obtains advice, no defense is made out. (*Dunlap* v. *New Zealand Fire & Marine Ins. Co.*, 109 Cal. 365 [42 Pac. 29]; *Franzen* v. *Shenk*, 192 Cal. 572 [231 Pac. 932]; *Burke* v. *Watts*, 188 Cal. 125 [204 Pac. 578].)

We do not deem it necessary to review the cases holding that the burden of proof was on the plaintiff to prove want of probable cause, as the record in this case shows clearly that no crime of any kind was committed, nor any facts from which a reasonable person would conclude that a crime had been committed, the testimony of the defendant himself showing clearly that he did not act upon any fraudulent representations, or other representations made by the plaintiff. It may be further stated, with reference to the testimony of attorney Hamilton, that while his recollection as to statements made by the defendant was indistinct, there must have been some representations made by the defendant, because it is almost inconceivable that any attorney possessing sufficient knowledge of the law to gain admission to practice, would advise that a covenant to defend a title constituted the crime of theft.

It is finally contended by the appellant that the question of probable cause was one of law solely for the court, and that the court erred in its instructions to the jury. Instruction No. 3 given at the request of the plaintiff is as follows: "The burden of proving affirmatively that the defendant acted without probable cause is on the plaintiff, and the question of whether the defendant had or had not probable cause for instituting the arrest and prosecution of the plaintiff is a matter of law for the court. You are, therefore, instructed that if you find from the evidence that the defendant caused the arrest and prosecution of the plaintiff on the charge of stealing money from him and at that time did not believe that she had stolen any money from him, and that at the time he did not believe that she had obtained any money or property from him by false representations and that he did not have sufficient knowledge as a cautious and prudent man, acting conscientiously and impartially, to believe the plaintiff guilty of stealing money or obtaining money or property from him by false representations, then, as a matter of law, there was no probable cause for the arrest and prosecution of the plaintiff, and if you find that in causing the arrest of plaintiff, defendant acted maliciously your verdict should be for the plaintiff."

This instruction was immediately followed by instruction No. 4, which is worded as follows: "If you find from the

evidence that the defendant, in good faith, communicated to Mr. Hamilton, the deputy city prosecutor of Los Angeles County, all the material facts known to him, affecting the question of the guilt of the plaintiff before a warrant was issued, and then acted upon the advice of Mr. Hamilton, probable cause has been established and you should find for the defendant.''

Instruction No. 3 is based upon the holding of the court in *Franzen* v. *Shenk*, 192 Cal. 572 [221 Pac. 932], and *Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143].

In the order denying a rehearing in the case of *Franzen* v. *Shenk*, *supra*, we find the following: ''The rule established by the authorities upon the subject of belief as an element of probable cause would seem to be this: While the question of probable cause is always a question of law for the court, and is to be determined by the standard of the ordinary man, yet if there is affirmative evidence of the actual belief of the defendant sufficient to justify a conclusion that he did not in fact suspect the plaintiff of being guilty of the crime with which she was charged, then the question of probable cause to that extent involves a question of fact to be submitted to the jury.'' The rule is very well stated as to how the law and the facts relative to probable cause shall be set forth, in 16 California Jurisprudence, page 751, section 18, as follows: ''The good faith, the belief and the knowledge of defendant are necessarily questions of fact to be determined by a jury, unless established by uncontroverted testimony or admitted by the defendant or his counsel. So whether or not the defendant acted *bona fide* upon counsel's advice, is a question of fact for the jury. The question whether the defendant had or had not probable cause for instituting the proceeding is a matter of law to be determined from the facts established in the case. If the facts are admitted, the question is solely one of law, for the court. If the facts are disputed and the evidence is conflicting, the question of what the facts are is one of fact, and the question as to whether or not the facts found establish want of probable cause is one of law for the court. If, however, there is affirmative evidence of the actual belief of the defendant sufficient to justify a conclusion that he did not in fact believe in the truth of the charge, the question of probable cause

to that extent involves a question of fact to be submitted to the jury. It has been said that the question of the defendant's belief as an element of probable cause should be submitted to the jury only when there is evidence upon the subject of his actual belief sufficient to support the conclusion that he did not in fact suspect the plaintiff of guilt, although he had reasonable grounds to do so."

The testimony of the witnesses Spratlen, Coombs and Leake clearly necessitated submitting to the jury the question of the defendant's belief, and whether there was any reasonable grounds for the defendant's belief in the guilt of the plaintiff. The testimony of these witnesses all goes directly to the question of malice on the part of the defendant justifying the jury in concluding that the defendant was going to have the plaintiff arrested, or, to use his own language—"Well, I am going to do it anyway"— though no crime had been committed.

The question of excessive damages is also presented for our consideration, but a review of the testimony, without setting it forth, satisfies us that the contention of the appellant in this particular is untenable. The arrest of a sensitive woman upon an unjust charge, her incarceration with inmates usually found in a city prison, even though only for a short time, having to undergo a preliminary examination, the shame and humiliation attendant upon such a proceeding, as well as the shock to her nervous system, amply justified the verdict of $1500. This amount, when the costs of this proceeding are deducted, will not leave any great sum that the plaintiff can call her own.

The judgment is affirmed.