[Civ. No. 8827. Second Appellate District, Division Two.—June 29, 1935.]

BERNICE BROWN, Respondent, v. NATHAN NEWBY, Jr., et al., Appellants.

Newby & Newby and Dee Holder for Appellants.

Wingert & Bewley for Respondent.

CRAIL, J.—This is an appeal by the defendants from a judgment against them in an action on a promissory note. The note was drawn in favor of one of the banks of Los Angeles in the sum of $11,250, dated July 1, 1930, with interest at the rate of seven per cent per annum and signed by the defendants. The note was thereafter assigned to the plaintiff at the request of a third party who was and is the plaintiff's real party in interest. Hereafter for convenience no distinction will be made between the plaintiff and her real party in interest; both will be referred to as the plaintiff. It was the contention of the defendants at the trial that the note had never been delivered *by them* to the bank; that the note was to be signed not only by the two defendants but by the plaintiff before it was to be delivered to the bank; that actual possession of the note was surrendered to the plaintiff for the purpose of obtaining his signature on it, but that without signing the note and improperly disregarding the conditions prescribed by the defendants he had delivered the note to the bank; and that therefore there was no delivery of the note which was binding upon the defendants as against the plaintiff.

The Hawaiian Airways Company, Ltd., was a corporation of which the defendants and the plaintiff were directors. In the year 1929 for the purpose of purchasing an airplane, the corporation executed in favor of the bank its promissory note in the sum of $15,000 and received in return the money thereon. The payment of this note was guaranteed by four guarantors, the two defendants, the plaintiff, and a Mr. Charles V. Eakin. This loan was renewed on three different occasions by the execution of a new note for said sum guaranteed on each occasion by the four guarantors. When the

last of these notes became due and the corporation was unable to pay it, the bank demanded payment from the guarantors and refused to grant further extensions of time unless a part payment of the principal was made and then only in case. the guarantors became the principal signers of the note. The defendants and the plaintiff had a conference in which the plaintiff informed the defendants that he was able to pay his one-fourth of the note. The defendants said they were unable to pay their portion. The plaintiff said that he would obtain an extension of time by paying one-fourth of the principal. But in the meantime the guarantor Eakin had moved away and could not be found, so from that time on he was treated as if he were of no value in the transaction except for the purpose of obtaining a contribution from him if he should be found. In the meantime also the Hawaiian Airways Company, Ltd., had gone into bankruptcy. The defendant Nathan Newby went to the bank and had a conversation with the officer in charge in which he told him that the plaintiff said that he was willing to pay one-fourth of the note and the interest if the bank would renew the loan with the three signatures on the note.

After this note was prepared by the bank, the defendant Nathan Newby signed it in the bank as one of the makers and left the bank with the statement that his son, Nathan Newby, Jr., would complete the transaction and would get the signature of the plaintiff to the note and sign it himself and see that the payment of the plaintiff was made together with the note with the three signatures on it. The defendant Newby, Jr., signed the note in his office and inclosed it in a letter dated July 1, 1930, addressed to the plaintiff, which read in part: ''Enclosed you will find the note signed by myself and father, which I am sending to you *for your signature.*''

From this point on there is a sharp conflict in the evidence as to the conversations between the parties and as to the intentions of the parties. There is no conflict, however, as to what was done. The plaintiff, by his representative, paid to the bank one-fourth of the original indebtedness and delivered to the bank the note signed, not by himself, but by the defendants only. Without the knowledge of the defendants he delivered to the bank at the same time a separate agreement in

writing to guarantee the new note for $11,250, and received from the bank the old note for $15,000. As a part of the same transaction a cashier's check for $11,250 was at the request of the plaintiff's representative issued by the bank in favor of the defendants. This check was delivered to the office of the defendants by the representative of the plaintiff. It was then endorsed by the defendants. No money of any kind or in any amount was paid to the defendants on account of said check. The note signed by the two defendants for the sum of $11,250 together with the plaintiff's separate guaranty and the cashier's check were then delivered by the plaintiff's representative to the bank and the old note was surrendered to the plaintiff. After this was all done, the plaintiff's representative wrote a letter to the defendant Newby, Jr., in which he set forth substantially what had transpired and in which he said, "The note in our possession signed by you and your father for $11,250 to the Citizens National Bank dated July 1, 1930, was delivered to the bank." But he did not say in the letter that the note had not been signed by the plaintiff and he said nothing in the letter about the guaranty which the plaintiff gave the bank in order to consummate the transaction. The defendants contend that they did not know that the name of the plaintiff was not signed to the note as a joint maker with them and that each thought the delivery of the note to the bank was made after the fulfillment of the condition of the delivery of the note to the plaintiff, to wit, his signature. When the note for $11,250 became due the amount was paid by the plaintiff and at his request the bank endorsed it to the present plaintiff who commenced the present action upon the note. It will be observed that as a result of this transaction, instead of having a right of contribution from each of the defendants limited in any event to $5,000, the plaintiff had a joint and several obligation against each of the defendants for the amount of $11,250.

From what has been said above, the great importance in the case of the issue of delivery is apparent. There was evidence to sustain the findings of the trial court, but there was a sharp conflict in the matter, and this is especially true since no reason has been suggested why the two defendants should assume the burden of severally paying three-fourths of the $15,000 debt when it is clear that as between them and

the plaintiff they were coguarantors and each liable to him for one-third only. An essential fact involved in the question of the delivery of an instrument is the intention of the maker in surrendering possession of the instrument. A party may testify to his own intent in doing an act where the intent is material. (*Horton* v. *Winbigler,* 175 Cal. 149 [165 Pac. 423]; *Runo* v. *Williams,* 162 Cal. 444 [122 Pac. 1082]; *Barnhart* v. *Fulkerth,* 93 Cal. 497 [29 Pac. 50]; *Kyle* v. *Craig,* 125 Cal. 107 [57 Pac. 791].) It is the contention of the defendants that the trial court erred in excluding a series of questions on the intent of the defendants in delivering the note to the plaintiff. "The general rule is well settled that, under our system, a witness may be examined as to the intent with which he did a certain act, when that intent is a material thing in the action." (*Runo* v. *Williams, supra.*) There was a series of questions directed to this issue. We give the following for illustrations: "Q. . . . at the time you sent the note in the letter to Mr. McAdoo, did you send it to him with the intent of the delivery of the same to him as a binding note upon him? Mr. Bewley: Just a minute. That is objected to as calling for a conclusion of the witness. The Court: Objection sustained. . . . Q. . . . At the time you wrote that letter [a second letter] . . . did you believe that the signature of Mr. McAdoo appeared on the note as maker? Mr. Bewley: Objected to as calling for a conclusion of the witness, *a state of mind.* The Court: I will sustain the objection." A series of rulings at the trial along this line indicated that the court was not interested in the testimony of the defendants as to what their intent was, and that it was useless for them to attempt to show it to the court. The questions were competent. ■ The plaintiff contends on his part that this error of the trial court was cured because the "following question was asked and for some reason an objection was overlooked". "I had no other conversation with Forker or McAdoo about this. If I had known that the promissory note, Plaintiff's Exhibit 3, was going to be delivered to the bank without the signature of Mr. McAdoo as one of the makers, I would not have signed that note." This answer was not responsive to the question asked but was inserted as a volunteer answer by an intrepid witness in spite of all barriers; and we feel sure that the trial judge received this evidence, if at all,

subject to the mental reservation built up by numerous rulings sustaining objections to questions calling for evidence of similar import. The defendants were prevented from showing by their own testimony that it was their intent that the note was to be delivered to the bank with the three signatures thereon and not otherwise. We are convinced that where the question involved was so vital to the defendants' case and where such evidence was excluded, the defendants did not have a fair trial. The judgment should be reversed.

During the trial, however, the plaintiff in open court offered to reduce the judgment by the sum of $1250. Also in the letter above referred to written by the plaintiff's representative to one of the defendants describing what had been done, there was the following provision, "It is further understood that, in the event that the money is never collected from the Hawaiian Airways Co., Ltd., and that no contribution is obtained from Charles R. Eakin, Mr. McAdoo will have to pay one-third of the original liability of $15,000.00." It is admitted that no money has been received from either of said sources. The defendants on their part speak in the brief of "the agreed liability of the defendants, to wit, $5,000.00 each". It is obvious from the above statements that the parties are very close together as to what would be ultimate justice between them, and it is also obvious that if the plaintiff would remit all of her judgment in excess of $5,000 against each of the defendants, there would be no further prejudice to the defendants by reason of the said rulings of the trial court and that the judgment should thereupon be affirmed in this court.

It is therefore ordered that if the plaintiff files herein within twenty-five days after the filing of this decision a waiver and renunciation of all of the judgment in excess of $5,000 against each defendant, a total of $10,000, together with interest at seven per cent per annum from July 1, 1930, the judgment will be affirmed; otherwise the judgment will be reversed; each party to pay his own costs on appeal in case the judgment is affirmed, but the plaintiff will pay the costs on appeal in case the judgment is reversed.

Fricke, J., pro tem., concurred.

Stephens, P. J., dissented.

On July 27, 1935, the District Court of Appeal entered the following order in said cause, affirming the judgment:

THE COURT.—The court having made an order on June 29, 1935, that "if the plaintiff files herein within 25 days after the filing of this decision a waiver and renunciation of all of the judgment in excess of $5,000.00 against each defendant, a total of $10,000.00, together with interest at seven per cent per annum from July 1, 1930, the judgment will be affirmed", and said waiver having been filed by the plaintiff on July 17, 1935, which was within the time limited in the court's order, the judgment of the lower court is affirmed, each party to pay his own costs.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 26, 1935.