[Civ. No. 12152. First Dist., Div. One. Jan. 15, 1943.]

PAUL SCHUBKEGEL, Respondent, v. JOHN GORDINO, Appellant.

C. D. Dorn and Anthony S. Devoto for Appellant.

Frank J. Perry and George G. Olshausen for Respondent.

PETERS, P. J.—This action is one for malicious prosecution growing out of the dismissal, because of insufficiency of the evidence, of a complaint signed by defendant charg-

ing the plaintiff with defrauding an innkeeper as defined in section 537 of the Penal Code. The jury brought in a verdict of $5,000 upon which judgment was entered. Defendant appeals from that judgment, contending that there is no evidence of lack of probable cause and malice sufficient to sustain the judgment, that certain evidence was prejudically excluded by the trial court, that certain instructions given were prejudicially erroneous, and that the verdict is excessive as a matter of law.

The facts surrounding the institution of the present action are as follows:

Defendant is the owner of a furnished apartment house in San Francisco. In August of 1940, he acted as his own manager. In that month plaintiff and his wife came to San Francisco from Denver, Colorado, and immediately went to visit Bertha Schubkegel, aunt of plaintiff, who was then living in defendant's apartment house and who is now acting as manager thereof. Plaintiff was without immediate prospects of work, had very little money, and had no place to live. Bertha Schubkegel discussed the matter with defendant, and the latter suggested that plaintiff and his wife occupy one of the then vacant apartments in the building rent free until plaintiff could get work, the understanding being that plaintiff would start paying rent from and after the time he got a job. Plaintiff was unable to secure a job for two or three weeks, and during that period remained in the apartment, rent free. On August 22nd he secured a temporary job with a service station which lasted one month and which paid him $117. In October he paid defendant $50 on account of rent, it being agreed that the rental of the apartment was $25 a month. Thereafter, plaintiff and his wife moved to another apartment in the same building, the agreed rental being $30 per month.

After the termination of the service station job plaintiff was out of work until December 16th, when he secured a temporary job at the Emporium as stock clerk at $22 per week, and where he worked through December 24th. During this period he paid $5 on his back rental. By January he admittedly owed defendant $112.72 for back rent. On January 13, 1941, between 5 and 6 a. m., plaintiff and his wife removed their linens and personal belongings from the apartment, leaving, however, a small trunk and suitcase in the storeroom of the apartment. They did not tell defendant they intended to move that morning. Upon discovering the

fact that plaintiff and his wife had moved, defendant went to see his attorney, and, upon telling him certain of the facts, was advised to go to the bond and warrant clerk's office, recount the facts to the deputy district attorney there stationed, and to request a warrant for plaintiff's arrest under section 537 of the Penal Code. That section provides that any person "who, after obtaining credit, food, accommodations, at an hotel, inn, restaurant, boarding-house, lodging-house, furnished apartment house, furnished bungalow court, or furnished auto camp, absconds, or surreptitiously, or by force, menace, or threats, removes any part of his baggage therefrom, without paying for his food or accommodations is guilty of a misdemeanor." Section 1861a of the Civil Code gives the keeper of a furnished apartment a lien on the baggage or other property of a guest in an apartment for the charges due from the guest for the accommodations supplied the guest.

. The defendant followed his attorney's advice, signed a complaint and a warrant was issued for plaintiff's arrest. He was arrested on January 20, 1941, while on a new job at the Emporium where he had secured employment just a few hours before his arrest. He was fingerprinted, placed in a cell with drunks and vagrants and kept in custody for four or five hours, when he was released. Subsequently, at his trial on the criminal charge, he was acquitted and the charges dismissed on the ground of insufficiency of the evidence. The present complaint for malicious prosecution was filed a short time after the criminal charge was dismissed.

On the issues of probable cause and malice, the evidence, and the reasonable inferences therefrom, are in conflict. Plaintiff testified that early in December defendant demanded some security for the rent; that he tried to secure such security but was unable to do so because he was unknown and unemployed; that on the evening of January 9, 1941, defendant told him that he was not running a charitable institution and ordered him to leave the apartment by January 22nd; that he, the plaintiff, agreed to be out of the apartment before that date; that on January 11th he asked the defendant if he could have his small trunk and suitcase then in the storeroom to pack; that defendant told him, "You can't have them, I am going to keep them for security on the rental"; that defendant also told him that he intended to keep the trunk and suitcase "until I could pay the rent"; that he moved between 5 and 6 a. m. on January 13th be-

cause he had to take their belongings to Oakland and his wife had to be at work at a coffee shop by not later than 7:30 a. m. There was also evidence that defendant had requested plaintiff to give him his automobile as security, but that plaintiff had such a small equity that it was not adequate. Admittedly, on January 10, 1941, defendant telegraphed to plaintiff's father in Missouri asking him to go security on the back rent in order "to avoid serious complications." A considerable portion of plaintiff's testimony was corroborated by plaintiff's wife and other witnesses. Mrs. Schubkegel particularly corroborated the conversation of January 9th. Moreover, Marc Chlemens testified to a telephone conversation had with defendant on January 12th that directly corroborates plaintiff's testimony concerning the January 9th conversation.

The defendant unequivocally denied the conversation of January 9th, and denied that then or at any other time he had ordered plaintiff to vacate the premises. He contended he was not present in the apartment on that evening until after 11 p. m., and was corroborated in this respect by his daughter, his son-in-law and a friend. This presented a direct conflict between plaintiff and his wife, and defendant and his witnesses. The jury has resolved that conflict in favor of plaintiff.

The defendant conceded that he did not tell his lawyer or the bond and warrant clerk of the conversation of January 9th.

Under this evidence we think the court and jury were justified in finding lack of probable cause and malice. The evidence most favorable to plaintiff, and the reasonable inferences therefrom, are capable of the interpretation that defendant had ordered the plaintiff to vacate, and that, by his conversation concerning the trunk and suitcase, had indicated that he was keeping those articles as security and that he waived his lien on the other articles in the apartment. Under such circumstances, the evidence is capable of the interpretation that defendant knew that plaintiff was not guilty of the offense defined in section 537 of the Penal Code. The jury was reasonably entitled to infer that the complaint was signed for the sole purpose of collecting a private debt. This is sufficient to support the implied findings of lack of probable cause and malice. (*Franzen* v. *Shenk*, 192 Cal. 572 [221 P. 932] ; *Burke* v. *Watts*, 188 Cal. 118 [204 P. 578].)

Defendant relies strongly on the statement appearing in

many cases that the action for malicious prosecution is not favored in the law, and contends that, tested by that standard, the evidence, as a matter of law, shows probable cause. Whatever confusion has been created by that phrase has been set at rest by the recent decision of the Supreme Court in *Jaffe* v. *Stone,* 18 Cal.2d 146, 159 [114 P.2d 335, 135 A.L.R. 775], where the court stated: "It is finally urged in support of the judgment that malicious prosecution suits are not favored. The frequency with which this statement is made in these cases calls attention to the need of some explanation. Properly applied, it means that public policy is in favor of the apprehension and punishment of criminals, and limits the person complaining of criminal charges by placing upon him the burden of proving the basic elements of the tort. These elements, viewed on the other side, furnish full defenses to the public spirited accuser or prosecutor. But where the difficult burden of proof is met by the plaintiff, recovery is allowed. This being true, we should not be led so astray by the notion of a 'disfavored' action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority, or by adopting stricter requirements of pleading than are warranted by the general rules of pleading. In brief, the public policy involved has properly served, over many years, to crystallize the limitations on the tort, and the defenses available to the defendant. Having served that purpose, it should not be pressed further to the extreme of practical nullification of the tort and consequent defeat of the other important policy which underlies it of protecting the individual from the damage caused by unjustifiable criminal prosecution."

Defendant also relies on the defense that, in good faith, he acted on the advice of counsel in signing the complaint. While it is true that reliance on such advice in good faith is a defense to an action for malicious prosecution, inasmuch as such defense shows probable cause (*Griswold* v. *Griswold,* 143 Cal. 617 [77 P. 672]; *Dunlap* v. *New Zealand F. & M. I. Co.,* 109 Cal. 365 [42 P. 29]; *Richter* v. *Neilson,* 11 Cal.App.2d 503 [54 P.2d 54]; see cases collected 16 Cal.Jur. p. 741, § 11), it is equally true that to establish the defense the defendant must show that the advice relied upon was given after a full and fair disclosure of all the facts within his knowledge tending to prove or disprove the criminal

charge. (*Burke* v. *Watts, supra; Franzen* v. *Shenk, supra; Starkweather* v. *Eddy*, 210 Cal. 483 [292 P. 467]; *Diggs* v. *Arnold Bros., Inc.*, 132 Cal.App. 518 [23 P.2d 71]; *Gooding* v. *McAlister*, 114 Cal.App. 284 [299 P. 774]; *Foster* v. *Banks*, 112 Cal.App. 622 [297 P. 106].) Although the defendant is under no duty to investigate and discover all the facts (*Richter* v. *Neilson, supra*), in order to take advantage of this defense he must disclose all of the pertinent facts within his knowledge. In the instant case the defendant admittedly did not tell his attorney or the deputy district attorney that he had ordered plaintiff to vacate the premises, although he admitted that the deputy district attorney had informed him that if he had ordered the plaintiff to vacate he was not lawfully entitled to a warrant. Although defendant denied the conversation of January 9th, there is ample evidence to support the implied finding that such a conversation was had. Under such circumstances, the evidence is sufficient to support the finding that there had not been a sufficiently full disclosure to raise the defense.

██ Although the evidence is sufficient to sustain the judgment, it is our opinion that the judgment must be reversed and a new trial had because of prejudicial error in the exclusion of evidence on the issue of malice. ██ Defendant was called as a witness by plaintiff under section 2055 of the Code of Civil Procedure, and exhaustively examined by plaintiff's counsel as to all the circumstances under which the warrant for plaintiff's arrest had been secured. The witness was then examined by his own counsel. After testifying that he had secured the warrant on the advice of counsel, the following occurred:

"Q. Were you actuated by any malice when you had that warrant issued? A. Not at all.

"MR. PERRY: That is objected to and I will ask that that question be stricken.

"THE COURT: The question is stricken. What about the answer?

"MR. PERRY: And the answer.

"THE COURT: And the answer may be stricken. Now the objection.

"MR. PERRY: I object on the ground that these questions are questions of fact to be determined, and any answer would be the conclusion of this witness.

"THE COURT: The objection is sustained.

"Mr. Devoto: We will leave that for our own—we will recall him as our own witness.

"Mr. Perry: I will make the same objection, because the objection is well taken."

It was clearly error to have sustained the objection. It is well settled that where the malice, intent or motive of a party is a material fact to be established, the testimony of the party himself directly to the point is competent evidence to prove it. The leading case in this state is *Runo v. Williams,* 162 Cal. 444 [122 P. 1082]. That case also involved an appeal by defendant from a judgment in a malicious prosecution action. While defendant was under examination as a witness his counsel asked him the following questions: "What was your motive and reason for instituting the criminal prosecution against Mr. Runo?"; "Whether in instituting the criminal prosecution you were actuated by malice, hatred or ill feeling or whether you were actuated by an honest belief that he was guilty of the offense that you charged against him?"; "When you instituted the criminal prosecution you honestly believed in good faith that he was guilty of the offense as charged against him?" (p. 450.) The trial court sustained objections to these questions "on the ground that they called for the opinion and conclusion of the witness and were incompetent, irrelevant, and immaterial." (p. 450.) This was held to constitute prejudicial error. The court first pointed out that in a malicious prosecution action "malice in fact is really the foundation of the action and is usually the pivotal point upon which the action turns" and that "it must be proven as a fact. This being true, and it being equally true that whatever the plaintiff must prove, the defendant may disprove, the latter has an unquestioned right to introduce any competent evidence to show that he had probable cause for instituting the criminal prosecution or that even if he did not have, he was not actuated by malice in doing so." (p. 450.) The court then discussed the precise issue here involved as follows:

"As a general proposition the right of a defendant to present evidence on these matters as bearing on the issues of probable cause and malice may not be disputed and the only question is must the state or condition of mind of the defendant, respecting belief, motive, and good faith be restricted to proof of acts and circumstances accompanying or surrounding the accusation, or in addition thereto, is the defendant a competent witness to testify directly respecting

them. Under the uniform rule of the authorities he unquestionably is.

"The rule is well settled in this state and other jurisdictions that where the malice, intent, or motive of the party is under the issues in the case a material fact to be established, the testimony of the party himself directly to the point is competent evidence to prove it. [Citing many cases.] The case nearest in character to the one here where the rule was applied is *Fleet* v. *Tichenor*, 156 Cal. 343 [34 L.R.A. N.S. 323, 104 P. 458] an action for damages for slander where it is said: 'The trial court sustained objection to two questions asked the defendant as to whether or not she was actuated in anything she had said or done by any wish or desire or any design or purpose to injure plaintiff. The questions were proper, both to show absence of actual malice for the purpose of avoiding exemplary damages and under the defense of privileged communication, and the court erred in overruling them. The general rule is well settled that, under our system, a witness may be examined as to the intent with which he did a certain act, when that intent is a material thing in the action. A jury or trial judge is not bound, of course, to believe the witness when he says he did not have a certain intent, but may find in the circumstances, actions and language an entirely different intent, but the testimony of the witness "is competent and relevant and not immaterial".' So in this case, as we have pointed out, the direct testimony of the defendant as to his belief, motive, and intent in making the criminal charge was competent evidence on the question of malice in fact, and pertinent also to his defense of the existence of probable cause for the prosecution.

"The general rule announced is the one obtaining in other jurisdictions and applied in numerous cases where the actions were, as here, for malicious prosecution and the questions put to the defendants were practically identical with those which were asked of the defendant in this case. In the following cases the direct question put to the defendant was whether when he made the complaint he believed it to be true or believed plaintiff guilty: *Spalding* v. *Lowe*, 56 Mich. 366, [23 N.W. 46]; *Garrett* v. *Mannheimer*, 24 Minn. 193; *Sparling* v. *Conway*, 75 Mo. 510; *Turner* v. *O'Brien*, 5 Neb. 542; *McKown* v. *Hunter*, 30 N.Y. 625; *White* v. *Tucker*, 16 Ohio St. 468. In the following cases the direct inquiry was made of defendant as to his motive in making the charge: *Flickenger* v. *Wagner*, 46 Md. 600; *Leak* v. *Carlisle*, 75 N.Y.S.

382; *Schwarting* v. *Van Wie etc. Co.*, 60 App.Div. 475, [69 N.Y.S. 978]. In others the direct inquiry put to the defendant was whether in making the charge he was actuated by malice or ill-will: *Coleman* v. *Herwick*, 2 Mackey, (D.C.) 189; *Campbell* v. *Baltimore & O. R. R. Co.*, 97 Md. 341, [55 A. 532]; *McCormack* v. *Perry*, 47 Hun, (N.Y.) 71; *Heap* v. *Parrish*, 104 Ind. 36, [3 N.E. 549]. In the case of *Van Sickle* v. *Brown*, 68 Mo. 627, the direct question asked of defendant was whether he acted in good faith in making the charge, and in *Sherburne, Admr. etc.* v. *Rodman*, 51 Wis. 479, [8 N.W. 414], the court was considering rulings upon direct questions asked the defendant upon all of the above matters in the same manner in which they were directed to the defendant in this case.

"In all the cases cited (without quoting from them) the right to make the direct inquiry on these matters was sustained on appeal or the cases were reversed for refusing to permit answer to such direct inquiries. (See, also, 3 Elliott on Evidence, § 2479.)'' (p. 451.)

The rule of this case has consistently been followed in this state, and there are no contrary cases. (*Johnston* v. *Benton*, 73 Cal.App. 565 [239 P. 60]; *Richter* v. *Neilson*, 11 Cal. App.2d 503 [54 P.2d 54]; *MacGruer* v. *Denivelle*, 113 Cal. App. 49 [297 P. 633]; *Brown* v. *Newby*, 8 Cal.App.2d 203 [47 P.2d 1076].)

Plaintiff urges that *Runo* v. *Williams, supra,* did not discuss the form of the question, and that the questions asked in the Williams case and the instant case were subject to the objection that they called for a conclusion. The quotation from the Williams case, *supra,* definitely shows that the form of the questions was considered and that the court held that such questions do not call for a conclusion but for a fact.

Plaintiff also contends that the question was not proper redirect examination, and, although that objection was not urged, that it may now be urged in support of the ruling of the trial court. (*Davey* v. *Southern Pacific Co.*, 116 Cal. 325 [48 P. 117].) Assuming the correctness of the rule urged, it has no application to the problem here under discussion for the reason that the question was proper redirect examination. While it is true that when plaintiff called defendant under section 2055 of the Code of Civil Procedure plaintiff's counsel did not examine defendant directly as to his state of mind, he did examine him in detail concerning the circumstances under which the warrant was secured for the very purpose of rais-

ing the inference of malice. This necessarily involved the state of mind of defendant and rendered the question proper when defendant's counsel took the witness on redirect examination.

The last contention of the plaintiff on this issue is that even if error was committed it was cured because the evidence was introduced elsewhere. In this connection the only portion of the record referred to by plaintiff is a question as to the "reason" he secured the warrant, to which he was permitted to answer that he believed the plaintiff had left the state. This question dealt with an entirely different subject matter than did the excluded question. The reason for getting out a warrant is entirely different from whether he was actuated by malice in securing it. Substantially the same argument was made in *Runo* v. *Williams* and was disposed of as follows (p. 453) : "In their brief counsel for respondent fail to make any argument or to cite any authority sustaining the ruling of the trial court on these questions. Their position on the subject simply is that 'the appellant was permitted to present every fact and circumstance tending to show his motive.' The complete answer to this suggestion is, as we have just pointed out, that the court erroneously refused to permit him to introduce competent evidence on this very material subject. . . . The evidence was competent and material to go before the jury and defendant had the right to have the jury determine, as is their exclusive province, the credit, weight, and effect to be given to it, and not the court." (See, also, *Richter* v. *Neilson, supra,* at pp. 515-516.)

The error in the exclusion of this testimony was clearly prejudicial. Malice is the very essence of the action. By excluding defendant's direct evidence on that issue the trial court required the defendant to rely on inferences from the facts and circumstances. Although, as already held, the evidence is legally sufficient to sustain the judgment, it is equally true that there was competent and ample evidence to sustain a contrary judgment. The case is a close one on the evidence, and for that reason any material error in the admission of evidence takes on added significance.

Defendant also complains of the exclusion of the testimony of his daughter concerning a portion of a telephone conversation alleged to have been overheard by her. The proffered evidence of identification was not sufficient and for that reason the testimony was properly excluded.

There was no prejudicial error in the instructions. In view

of the fact that a new trial must be had no useful purpose would be served in discussing defendant's contention that the verdict is excessive.

The judgment appealed from is reversed.

Knight, J., concurred.

WARD, J.—I dissent.—The majority opinion holds that the evidence is sufficient to sustain the judgment. I agree with this conclusion and all others with the exception of that holding prejudicial error to have occurred in the exclusion of certain evidence which will be hereinafter considered. The only question of any moment not passed upon is the claim of excessive damages.

Ordinarily the amount of damages is left to the experience and common sense judgment of the jury, subject to appropriate instructions and, if necessary, a revision by the trial judge. Unless the award is so disproportionate to the injury suffered or harm done as to clearly show that the verdict was the result of passion, prejudice or other unlawful influence, a reviewing court will not interfere. (*Rowe* v. *Rennick,* 112 Cal.App. 576 [297 P. 603].) The members of a reviewing court, simply reading the record, might conclude that an award was disproportionate to the harm sustained, but, given an opportunity to observe the witnesses, their conduct, manner, etc., they might agree that the award of the jury was correct. There is evidence that plaintiff suffered greatly from humiliation and the loss of an opportunity to obtain a civil service appointment, etc. It does not appear, however, that the jury was actuated by any motive other than a desire to do justice. In my opinion, under the circumstances the amount of the verdict should stand.

The sole cause assigned in the majority opinion for reversal is the order of the trial court, made while defendant was a witness in his own behalf, striking out the following question and answer: "Q. Were you actuated by any malice when you had that warrant issued? A. Not at all." It may be conceded that while the question calls for the conclusion of the witness, such evidence generally is admissible upon the theory that in an action similar to the present a defendant is permitted to show an absence of ill will or malice toward plaintiff. In other words, the intent of the defendant and his reason for obtaining the warrant are material to a determination of the issues involved, but the error in excluding

evidence relative thereto is not necessarily prejudicial, particularly when the defendant's attorney gives notice that he will introduce the evidence later in the trial.

In the present case the above question, if answered in the affirmative, would have been tantamount of a confession of judgment, so that the only matter to determine would be the amount thereof. The allegation in the complaint—that the defendant acted maliciously—is denied in the answer. The defense was presented with the purpose of establishing its contention that the warrant was not obtained by the defendant maliciously, and the defendant was subsequently permitted to show that he had no malicious intent. He was permitted to give his reasons for obtaining the warrant; and testified he told plaintiff that if he attempted to "sneak" out a warrant would be issued for his arrest; that subsequently, when he thought plaintiff was "on his way back to Denver," the warrant was issued.

Injury is not presumed from error; the objecting party must affirmatively show that the error was prejudicial; not only that it affected the essential rights of a party, but resulted in a miscarriage of justice. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545 [147 P. 238].)

In directing a reversal herein, the majority opinion relies particularly on the authority of *Runo* v. *Williams,* 162 Cal. 444 [122 P. 1082], which it states is the ruling which has been consistently followed in this state, citing *Johnston* v. *Benton,* 73 Cal.App. 565 [239 P. 60] ; *Richter* v. *Neilson,* 11 Cal. App. 2d 503 [54 P.2d 54] ; *MacGruer* v. *Denivelle,* 113 Cal. App. 49 [297 P. 633] ; *Brown* v. *Newby,* 8 Cal.App.2d 203 [47 P.2d 1076].

*Johnston* v. *Benton, supra,* and *Brown* v. *Newby, supra,* are not malicious prosecution cases, and hold only that where "intention" is an issue it may be proven by direct testimony. In *MacGruer* v. *Denivelle, supra,* a malicious prosecution action, the judgment was for defendants. The court merely held that in such a case one may testify to his motive and good faith.

In *Richter* v. *Neilson, supra,* p. 516, *Runo* v. *Williams, supra,* is approved to the effect that "a defendant is entitled to introduce any competent evidence to show that he had reasonable cause for instituting the proceedings or that even if he did not have such cause, he was not actuated by malice," but a reversal was based, not upon refusal to permit defendant to testify with reference to the state of mind which

prompted her to institute a criminal proceeding—as to which she did so testify—but for the following reason (pp. 511-512): ". . . the evidence, in our opinion, is legally insufficient to establish a case of malicious prosecution, first, for the reason that the record reveals no direct evidence to prove that the defendant was actuated by any malicious motives, nor in our opinion were any circumstances proved from which an inference of malice may be reasonably inferred; and secondly, it affirmatively appears that in causing plaintiff's arrest defendant acted under the advice of the deputy district attorney and in the honest belief that plaintiff had committed the offense with which he was charged." In the Runo case, among certain questions approved was one going to honest belief in the guilt of the party charged with a criminal offense. So far as this question is concerned, the Supreme Court in *Murphy* v. *Davids,* 181 Cal. 706, 718 [186 P. 143], said: "The court sustained respondent's objection to the question propounded by the attorneys for the defendants: 'Did you honestly, in your conversation with them, state to them everything that you knew or had learned touching that matter?' (Whether Murphy was guilty of embezzlement.) The objection went to the word 'honestly,' as calling for a conclusion of the witness. It was for the jury to determine from the evidence whether or not defendants related their knowledge of plaintiff and his acts *honestly.* The objection was properly sustained. His belief on the subject of plaintiff's guilt would have been admissible (*Runo* v. *Williams,* 162 Cal. 444 [122 P. 1082]), but the question, in the form in which it was propounded, was vulnerable to the particular objection leveled at it." In the Runo case, also, the court indicated that certain instructions were defective, and assumed the errors would be cured on a new trial. The judgment therein was reversed, not for one, but for two stated reasons, namely, the refusal to permit the defendant to testify on the subject of malice and the issue of probable cause. In the present case the *sole* ground noted in the majority opinion is the order striking from the record the question, and defendant's answer that he was not actuated by "any" malice when the warrant was issued, the only reason for the court's ruling being that the "answer would be the conclusion of this witness." Technically the ruling was correct. (*Murphy* v. *Davids, supra.*) If there was no evidence in the case relative to the purpose and reason for the issuance of the warrant, the conclusion reached in the majority opinion might be justifiable, but an

examination of the record discloses that the defense presented evidence showing the "reason."

There is nothing in the record indicating to my mind any probability that a different verdict would have been returned had the question and answer been allowed to stand, nor am I convinced from a reading of the record, including the evidence, that even conceding the ruling to have been erroneous, it resulted in a miscarriage of justice. In my opinion the judgment should be affirmed.

A petition for a rehearing was denied February 13, 1943. Ward, J., voted for a rehearing.

Respondent's petition for a hearing by the Supreme Court was denied March 15, 1943. Gibson, C. J., Curtis, J., and Carter, J., voted for a hearing.